1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JORGE ALEJANDRO ROJAS,                    Case No. 2:23-cv-02667-SPG (KSx)

12                        Plaintiff,           **ORDER GRANTING DEFENDANT'S**
                                               **MOTION TO SET ASIDE DEFAULT**
13          v.                                 **AND DEFENDANT'S MOTION TO**
                                               **DISMISS, AND GRANTING**
14   UNPLUGGED MEDIA, LLC;                     **PLAINTIFF'S MOTION FOR LEAVE**
                                               **TO AMEND HIS PLEADINGS (ECF**
15   ALEXANDER BYKHOVSKY,                      **NOS. 46, 48, 50).**

16                        Defendants.

17

18

19          Before the Court is Defendant Alexander Bykovsky's Unopposed Motion to Set

20   Aside Entry of Default, (ECF No. 50), and Motion to Dismiss Plaintiff's First Amended

21   Complaint pursuant to Rule 12(b)(2) or, in the alternative, to Strike Plaintiff's Service of

22   Process, (ECF No. 46 ("Motion")); and Plaintiff's unopposed Motion for Leave to File a

23   Second Amended Complaint, (ECF No. 48).  Plaintiff opposes Defendant's Motion to

24   Dismiss, (ECF No. 52 ("Opposition")).  Having considered the parties' submissions, the

25   relevant law, and the record in this case, the Court finds the matter suitable for decision

26   without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons

27   that follow, the Court GRANTS Defendant's Motion to Set Aside Entry of Default,

28

GRANTS Defendant's Motion to Dismiss, and GRANTS Plaintiff's Motion for Leave to file a Second Amended Complaint.

## I.    BACKGROUND

### A.    Factual Background

The First Amended Complaint ("FAC") alleges Plaintiff, a citizen of the State of Illinois, maintains at least two cellular telephone lines, one with a telephone number ending in 1582 (the "1582 Line") and one with a telephone number ending in 6308 (the "6308 Line") (collectively, "Lines"). (ECF No. 12 ("FAC") ¶¶ 34–35). Plaintiff is the account holder and sole user of both Lines, which are not associated with a business. (*Id.* ¶¶ 36–37). According to Plaintiff, "to obtain solitude from invasive and harassing telemarketing calls," on or about January 18, 2008, and March 22, 2023, respectively, Plaintiff registered the 1582 Line and the 6308 Line on the Federal Do Not Call Registry. (*Id.* ¶¶ 38–40).

On or about April 3, 2023, at 2:06 p.m. Pacific Time, Plaintiff received a telemarketing phone call from Defendants to the 1582 Line while Plaintiff was traveling within the Central District of California. (*Id.* ¶¶ 55, 57–58). Plaintiff missed the call, but a pre-recorded message was left on Plaintiff's voicemail for the 1582 Line advertising the services of an employee retention credit processing service. (*Id.* ¶¶ 59, 64). Plaintiff called the number back on April 4, 2023, and spoke with an individual named Dylan Jenkins, who identified the company he was representing as "Bottom Line Concepts." (*Id.* ¶ 59). Jenkins also sent Plaintiff an email using a domain name of @bottom-lineconcepts.com and provided Plaintiff with a website to Bottom Line Concepts, at www.bottomlinesavings.com. (*Id.* ¶¶ 59, 63). Throughout the privacy policy associated with this website, the policy identified the entity name associated with the policy as "Unplugged Media, LLC." (*Id.* ¶ 61).

Between April 3, 2023, and May 31, 2023, Plaintiff received 55 telemarking telephone calls from Defendants to his Lines. (*Id.* ¶¶ 55–142). Approximately 40 of these calls went to the 1582 Line. *Cf.* (*id.* ¶¶ 88, 92–93, 96–97, 99, 101–05, 107–09, 123–24, 138). According to Plaintiff, the purposes of the calls were to offer the services of an

1 organization that submits paperwork to government authorities to receive the employee
2 retention tax credit.  (*Id.*¶ 147).  Though most of the calls involved pre-recordings, *see,*
3 *e.g.*, (*id.* ¶ 142), the telephone numbers and specific recordings used by Defendants varied.
4 *Compare* (*id.* ¶¶ 57, 65), *with* (*id.* ¶¶ 114–15).

5       Plaintiff alleges that each of the Defendants is responsible and liable for these calls.
6 The FAC alleges that Defendant Unplugged Media makes calls on behalf of Defendant
7 Bottom Line because "it would be unreasonable for Unplugged Media to have information
8 on its website of bottom-lineconcepts.com if it was not making calls on behalf of Bottom
9 Line."  (*Id.* ¶ 145).  Defendant Alexander Bykhovsky is an "authorized person" of
10 Defendant Unplugged Media.  (*Id.* ¶ 12).  Defendant Joshua Fox is a manager of Defendant
11 Bottom Line.  (*Id.* ¶ 10).  The FAC also alleges that Defendants Fox and Bottom Line
12 "contracted with" Defendants Unplugged Media and Bykhovsky.  *See* (*id.* ¶ 152).

13       **B.    Procedural History**

14       On April 8, 2023, Plaintiff filed the original complaint against Defendants Joshua
15 Fox and Bottom Line Concepts.  (ECF No. 1).  On August 16, 2023, Plaintiff filed the
16 FAC, which adds as Defendants Unplugged Media and Alexander Bykhovsky and asserts
17 two counts against all Defendants: (1) violations of the Telephone Consumer Protection
18 Act of 1991's ("TCPA") automated telemarketing call provisions under 47 U.S.C.
19 § 227(b)(1); and (2) violations of the TCPA's implementing regulations, including the "Do
20 Not Call Registry," under 47 C.F.R. § 64.1200.  *See* (FAC ¶¶ 182–94).  On or about
21 September 14, 2023, Plaintiff filed a notice of dismissal and voluntarily dismissed with
22 prejudice Defendants Bottom Line Concepts and Fox.  (ECF No. 19).

23       On September 20, 2023, the Court issued an order to show cause why the Court
24 should not dismiss the action for lack of prosecution.  (ECF No. 22).  On September 28,
25 2023, Plaintiff filed a proof of service as to Defendant Unplugged Media, executed that
26 day.  (ECF No. 23).  On October 22, 2023, Plaintiff filed a notice of a returned unexecuted
27 summons as to Defendant Bykhovsky.  (ECF No. 24).  That same day, Plaintiff filed an *ex*
28 *parte* application requesting approval for an alternative method of service on Defendant

Bykhovsky, which was subsequently granted. (ECF Nos. 25–26, 36). On November 6, 2023, the Clerk of Court entered an entry of default as to Defendant Unplugged Media. (ECF No. 30).

On January 25, 2024, Plaintiff filed a proof of service as to Defendant Bykhovsky, which set the deadline for Bykhovksy's answer for February 14, 2024. (ECF No. 37). On February 14, 2024,[1] Defendant Bykhovsky filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. (ECF No. 40). The Court struck Defendant Bykhovsky's motion on February 26, 2024, for failure to notice a date for the motion, among other deficiencies. (ECF No. 43). On March 6, 2024, per Plaintiff's request, the Clerk entered default as to Defendant Bykhovsky. (ECF Nos. 44–45). That same day, Defendant Bykhovsky filed a motion to dismiss Plaintiff's FAC for lack of personal jurisdiction, or in the alternative, to strike service. (ECF No. 46 ("Mot.")). On March 7, 2024, Defendant Bykhovsky filed a Motion to Set Aside the Entry of Default, which Plaintiff does not oppose. (ECF Nos. 50, 51).

On March 10, 2024, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, (ECF No. 48 ("MFLA")), representing that Defendant Bykhovsky did not oppose the MFLA. On March 27, 2024, Plaintiff timely opposed Defendant's Motion to Dismiss. (ECF No. 52). Aside from the Motion to Dismiss and Motion to Set Aside Entry of Default, Defendant Bykhovsky submitted no further filings related to any of the pending pleadings or motions.

## II.   DISCUSSION

There are several interrelated motions before the Court. The Court considers whether the default entered against Defendant Bykhovsky should be set aside before

---

[1] This filing was not entered on the docket until February 23, 2023. (ECF No. 40). Plaintiff moved for entry of default as to Defendant Bykhovsky on February 21, 2024. (ECF No. 38). The Clerk initially entered default on February 23, 2024, (ECF No. 39), but then provided notice of a clerical error that the default issued improperly. (ECF No. 42).

turning to Defendant's motion to dismiss based on lack of personal jurisdiction.  Finally, the Court addresses Plaintiff's MFLA.

### A.   Defendant Bykhovsky's Motion to Set Aside Entry of Default

Defendant Bykhovsky asks the Court to set aside the default entered on March 6, 2024, against him.  Defendant contends that he timely responded to the FAC, though had inadvertently failed to sign the Rule 12(b)(2) motion.  According to Defendant, such error was excusable because he represents himself, and he asks the Court to determine the case on the merits.

#### 1.   Legal Standard

A district "court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  To determine whether good cause exists, the court considers three factors: (1) whether culpable conduct by the defendant led to the default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff will be prejudiced if default is set aside.  *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011) (citation omitted).  The court's discretion to set aside a default entry is "especially broad" when a motion to set aside the entry is filed prior to the entry of a default judgment. *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) (citation omitted).  "[D]efault judgments are ordinarily disfavored."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  "[A] case should, whenever possible, be decided on the merits."  *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

#### 2.   Analysis

##### a.   Culpable Conduct

Under the first factor for a determination of whether good cause exists, a defendant's conduct is culpable "if he has received actual or constructive notice of the filing of the action and intentionally failed to answer."  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  However, "simpl[e] nonappearance following receipt of notice of the action" does not alone demonstrate culpability.  *Gregorian v. Izvestia*, 871 F.2d 1515, 1525 (9th Cir. 1989).  Instead, for a failure to respond to a complaint to be culpable,

"the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Signed Personal Check No. 730*, 615 F.3d at 1092. Thus, a defendant's conduct is often deemed culpable where "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.*

Here, the Court does not find culpable conduct. It appears that Defendant, who purports to be located in Panama, sought to timely file his responsive motion challenging personal jurisdiction but failed to do so because of his failures to comply with this District's Local Rules and this Court's Standing Order. (ECF No. 50 at 1). Though Defendant Bykhovsky must follow all rules governing this action, his actions do not demonstrate "an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process" sufficient to demonstrate culpable conduct. *Maciel Builders LLC v. US Framing Int'l LLC*, No. 19-CV-03660-BLF, 2020 WL 553942, at *2 (N.D. Cal. Feb. 4, 2020) (citations omitted). Therefore, the first factor weighs in favor of setting aside the entry of default as to Defendant Bykhovsky.

### b. Meritorious Defense

Under the second factor, a defendant seeking to set aside an entry of default must generally present facts that, if true, would constitute a defense. *Audio Toys, Inc. v. Smart AV Pty Ltd.*, No. C 06-6298 SBA, 2007 WL 1655793, at *3 (N.D. Cal. June 7, 2007) (a defendant must enumerate a "factual or legal basis that is sufficient to raise a particular defense"). Courts are not tasked with determining whether factual allegations are true when deciding motions to set aside default. *Id.*

Defendant Bykhovsky does not expressly address in his motion to set aside default whether he has meritorious defenses; instead, he asks for the entry of default to be set aside primarily due to the "excusable error by a [p]ro [s]e litigant" of failing to sign the motion. (ECF No. 50 at 2). The Court notes, however, that Defendant Bykhovsky's motion to dismiss contests personal jurisdiction. *See Mission Trading Co., Inc. v. Lewis*, No. 16-CV-01110-JST, 2016 WL 4268667, at *2 (N.D. Cal. Aug. 15, 2016) (personal jurisdiction

challenge is a "potentially meritorious defense" which "counsels in favor of vacating default"). Defendant Bykhovsky appears to reside outside of the United States and has properly preserved his personal jurisdiction defense by filing his request to set aside default after he filed his motion challenging personal jurisdiction. The Court finds that, because Defendant Bykhovsky may have a successful defense to the action based on lack of personal jurisdiction, this second factor weighs in favor of setting aside the entry of default.

c.   Potential Prejudice to Plaintiff

Under the third factor, to demonstrate prejudice, a plaintiff must show that setting aside the default would "result in greater harm than simply delaying resolution of the case." *Signed Pers. Check No. 730*, 615 F.3d at 1095. For a delay to be prejudicial, it must "result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Grp. Life Ins. Plan v. Knoebber,* 244 F.3d 691, 701 (9th Cir. 2001), (overruled on other grounds). Further, simply "[b]eing forced to litigate on the merits cannot be considered prejudicial because a plaintiff would have had to do so anyway had there been no default." *Yan v. General Pot, Inc.*, 78 F. Supp. 3d 997, 1005 (N.D. Cal. 2015).

Here, Plaintiff does not oppose Defendant's request to set aside the default entry and has not identified any prejudice that would result from doing so. *See* (ECF No. 51). The fact of non-opposition weighs strongly in favor of setting aside the default. *Metro. Life Ins. Co. v. Gallagher*, No. CV 14-01931 (BRO) (KKx), 2015 WL 13917992, at *1 (C.D. Cal. Feb. 6, 2015) ("That Plaintiff does not oppose the motion demonstrates that Plaintiff will not be prejudiced and provides an alternative basis for granting [Defendants'] request."). The Court thus grants Defendant Bykhovsky's motion to set aside the entry of default.

**B.   Defendant Bykhovsky's Motion to Dismiss**

Defendant Bykhovsky has moved to dismiss the FAC, arguing that this Court has no personal jurisdiction over him.

1.   Legal Standard

-7-

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797, 800 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).[2]  "If service is not authorized under a relevant federal statute, the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).  As relevant here, California's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts may be established via general jurisdiction or specific jurisdiction. *See id.* at 801–02.  General jurisdiction exists where the defendant's contacts with the forum state "are so continuous and systematic as to render them essentially at home in the forum

---

[2] For a plaintiff appearing *pro se*, as is the case here, the Court must construe the allegations of the complaint liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).  The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Nor must the Court "assume the truth of legal conclusions cast in the form of factual allegations." *Lleto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  Moreover, the Court's liberal interpretation "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). Even if a defendant has "sufficient minimum contacts," the court must also find that the exercise of jurisdiction is reasonable. *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1136 (S.D. Cal. 2018) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Here, Plaintiff does not allege that Defendant Bykhovsky is subject to general jurisdiction in California, *see* (FAC ¶¶ 11–12 (Defendants Unplugged Media and Bykhovsky allegedly located in Puerto Rico)), and Defendant Bykhovsky represents that he does not reside in California. (Mot. at 2). Therefore, the Court examines if Plaintiff has sufficiently pleaded specific jurisdiction.

Courts analyze specific personal jurisdiction under a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs of the test. *Id.* If the plaintiff fails to demonstrate either, personal jurisdiction does not lie in the forum state. *Id.* If, however, the plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476–78.

The first prong of this test asks courts to apply either a "purposeful availment" or "purposeful direction" standard. *Schwarzenegger*, 374 F.3d at 802. Although the purposeful availment standard has typically been applied in actions based on contract while

the purposeful direction standard typically applies to actions sounding in tort, the Ninth Circuit has repeatedly stated that these usual applications do not create a "hard-and-fast-rule." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). *See also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023). Instead, the Ninth Circuit has found that "the purposeful direction and availment tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (internal quotation marks and citation omitted). Instead of considering merely the nature of a plaintiff's claims when deciding which test to apply, "courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

Purposeful direction occurs where the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). "Failing to sufficiently plead any one of these three elements is fatal" to a plaintiff's "attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014). Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," the defendant must "submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and then quoting *Burger King*, 471 U.S. at 476). In all cases, however, a plaintiff must establish "a direct nexus" between a defendant's contacts with the forum state and the cause of action. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

2.    <u>Analysis</u>

1    Because Plaintiff brings claims for violation of the TCPA, which sound in tort, the
2    Court first applies the "purposeful direction" test to determine whether Defendant
3    Bykhovsky "directed [his] actions at the forum state, even if those actions took place
4    elsewhere." *See Pico v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *see also Moser v.*
5    *Health Ins. Innovations, Inc*., No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *3
6    (S.D. Cal. Jan. 5, 2018) (applying purposeful direction test to a TCPA claim and collecting
7    cases).

8    Defendant Bykhovsky, who claims to be a Panama resident, (Mot. at 4), contends
9    that the FAC fails to allege that Bykhovsky has any contacts with the State of California
10   or any personal involvement in the telemarketing phone calls. (*Id.* at 3).  Though Defendant
11   Bykhovsky acknowledges the FAC's allegations that "Bykhovsky engaged in the
12   telemarketing scheme," Bykhovsky contends that this "threadbare accusation" cannot
13   satisfy Plaintiff's burden to establish that Bykhovsky "personally participated" in the
14   alleged calls.  (*Id.*).   In response, Plaintiff contends that Defendant Bykhovsky was
15   personally involved in the alleged phone calls because Bykhovsky is an officer of
16   Unplugged Media and "[o]fficer liability in TCPA actions is well established." (ECF No.
17   52 ("Opp.") at 7).  Plaintiff also argues that "Defendants committed an intentional act" that
18   was aimed at the State of California by making telephone calls to California area codes
19   "they knew" were unlawful. (*Id.* at 6).[3]  Plaintiff also suggests that Defendant Bykhovsky
20   has contacts with California because Bykhovsky is the corporate officer or agent of several
21   entities, purportedly located in the district, including "Document Preparation Made Easy,"
22   which, as of December 2019, is a suspended California entity. *See* (*id.* at 8).

23

24   [3] Plaintiff also "bring[s] to the Court's attention that [Defendant] Bykhovsky has a
25   constantly shifting narrative as to where he is located," arguing that Bykhovsky's
     "corporate entity" lists a Puerto Rico address, Bykhovsky represented he was a Puerto
26   Rican resident in the now-stricken motion to dismiss, and that Bykhovsky has recorded
27   documents in Nevada (before a notary public in New York) concerning a property he owns
     through another business.  (*Id.* at 7–8).  Plaintiff's argument asks the Court to resolve a
28   factual dispute, which is improper at the motion to dismiss stage.

1    Under the "intentional act" requirement, the plaintiff must demonstrate that the
2    defendant committed an "an actual, physical act in the real world." *Schwarzenegger*, 374
3    F.3d at 806. The Ninth Circuit applies a "relatively low" threshold to the determination of
4    what constitutes an intentional act, *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233
5    (N.D. Cal. 2014), with courts finding intentional acts when a defendant advertises products
6    outside the forum, *Schwarzenegger*, 374 F.3d at 806, or sells an allegedly infringing
7    product outside the forum, *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674
8    (9th Cir. 2012). Here, the FAC fails to allege that Defendant Bykhovsky engaged in an
9    intentional act.

10    The FAC alleges that "Defendants" made 55 telemarketing calls to Plaintiff's phone
11    numbers, *see* (FAC ¶¶ 55–142), but the only Defendant Plaintiff alleges was identified in
12    the calls is Defendant Bottom Line Concepts. *See* (*id.* ¶¶ 59–64 (the individual who
13    answered Plaintiff's return call "identified the company as Bottom Line Concepts")). By
14    contrast, the only allegations concerning Defendant Bykhovsky, specifically, are that: (1)
15    Bykhovsky is an "Authorized Person" for Unplugged Media, (*id.* ¶ 12); (2) Bykhovsky
16    "engaged in the operation of the telemarketing scheme," (*id.* ¶ 150); (3) the individual
17    defendants were "aware that their corporate entities were participating in the illegal
18    telemarketing calls," (*id.* ¶ 151); and (4) that Bykhovsky "contracted with" Defendants Fox
19    and Bottom Line Concepts, (*id.* ¶ 152). Plaintiff identified Defendant Unplugged Media,
20    the company for which Defendant Bykhovsky is alleged to be an "Authorized Person,"
21    through his review of a "May 9, 2023, archived copy" of Bottom Line Concept's privacy
22    policy which "identifies the entity Unplugged Media, LLC, and its Puerto Rico Address,
23    throughout." (*Id.* ¶ 61). These conclusory allegations are insufficient to support a plausible
24    inference that Defendant Bykhovsky engaged in an intentional act in connection with the
25    telemarketing phone calls to Plaintiff.

26    The FAC premises Defendant Bykhovsky's conduct on his role as "Authorized
27    Person" of Defendant Unplugged Media, which is allegedly affiliated with Bottom Line
28    Concepts, the entity that self-identified with the first telemarking call made. *See* (FAC ¶

59).  The Court, however, "cannot exercise jurisdiction over [corporate managers] solely on the grounds that they are [the defendant-entity's] only managers."  *Moser*, 2018 WL 325112, at *5; *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (holding "there must be a reason for the court to disregard the corporate form" because "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person").  Plaintiff has alleged no facts nor theory that would warrant the Court disregarding Unplugged Media's (or Bottom Line Concepts) corporate form, such as Defendant Bykhovsky being the "central figure" or "guiding spirit behind the wrongful conduct, *Davis* 885 F.2d at 523 n.10, or an alter ego theory of liability.  *See Seymour v. Hull Moreland Engineering,* 605 F.2d 1105, 1111 (9th Cir. 1979) (to assert jurisdiction under an alter ego theory the plaintiff must establish "that there is such a unity of interest and ownership between the corporation and the shareholder that the two no longer exist as separate entities" and "that failure to disregard the corporation would result in fraud or injustice").  Further, if Defendant Bykhovsky's role as "Authorized Person" is put aside, there are no allegations that Defendant Bykhovsky "personally made the telephone calls or directed someone to make those telephone calls on his behalf."  *Charman v. Desert Lake Grp., LLC*, No. 23-CV-0959-BAS-KSC, 2024 WL 2000640, at *4 (S.D. Cal. May 6, 2024); *see also Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 679 (9th Cir. 2014).[4]

---

[4] Though the Court need not reach the remaining factors, the Court notes that Plaintiff cites to sufficiently persuasive authority that defendants who engage in telemarketing calls, in violation of the TCPA, direct their activities at the forum and know that harm will be felt in the forum when those defendants call an in-forum phone number.  *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state."); *see also Schlesinger v. Collins*, No. 19-CV-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (citing cases); *Moser*, 2018 WL 325112, at *4; *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that where the defendant "intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave

Similarly, Plaintiff has not shown that Defendant Bykhovsky has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Schwarzenegger*, 374 F.3d at 802. Plaintiff simply has not established "a direct nexus" between any contacts of Defendant Bykhovsky with the forum state and Plaintiff's claims.

Therefore, the Court grants Defendant Bykhovsky's motion to dismiss the FAC due to lack of personal jurisdiction.[5] Because, however, Plaintiff has only made one previous attempt to amend his pleadings, the Court does not find amendment would be futile. The Court therefore grants Plaintiff leave to amend his complaint one more time to cure the deficiency regarding personal jurisdiction over Defendant Bykhovsky only. *See Eminence*

---

rise to this action, [the defendant] expressly aimed its conduct at California" and "knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California"). Therefore, the issue here is not whether the wrongful conduct is aimed at the forum or whether the harm would foreseeably be felt in the forum for purposes of determining personal jurisdiction. The deficiency in the FAC is that the allegations do not plausibly demonstrate that *Defendant Bykhovsky* engaged in that conduct. Plaintiff's insistence that he received calls to his California phone number and at least one call while located in the District does not provide any bearing on that dispositive question.

[5] The Court similarly does not reach Defendant Bykhovsky's alternative request to strike Plaintiff's service of process, but notes that Defendant Bykhovsky provides no authority for his statement that the Inter-American Convention on Letters Rogatory ("IAC") mandates that individuals must be served by letters rogatory. Defendant Bykhovsky also does not contend with the Court's findings in its order granting Plaintiff's request for alternative service that (1) the IAC does not mandate service of process by letters rogatory, and (2) service of process by email is not prohibited by the IAC. *See* (ECF No. 36 at 5–6); *see Lewis v. Sandor*, No. CV 18-8615 PSG (JEMx), 2019 WL 6655387, at *2 (C.D. Cal. Feb. 15, 2019) (the "IAC does *not* supersede the Federal Rules of Civil Procedure methods for service of process in signatory countries" (emphasis in original)); *United States v. Padilla*, No. CIV.S-01-2301 FCD/JF, 2002 WL 471838, at *1 (E.D. Cal. Feb. 25, 2002) (the IAC "provides one method of service, letters rogatory," but "it does not preempt all other means of service"); *see also, e.g.*, *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, No. 1:10-CV-564, 2013 WL 12178588, at *8 (S.D. Ohio Aug. 21, 2013) ("[S]ervice of process by via international courier and email is not prohibited by the IAC.").

1   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend in the
2   Ninth Circuit is to be "freely given").

3           a.   Jurisdictional Discovery

4           Plaintiff asks the Court to grant him leave to amend his FAC or leave to engage in
5   limited jurisdictional discovery.  Plaintiff contends that he would seek "information that
6   [Defendant] Bykhovsky relied upon to place the telemarketing calls to Plaintiff," and that
7   "[i]f Bykhovsky's records indicate a California or no address, jurisdiction is proper here."
8   (Opp. at 9–10).

9           "Discovery is available in federal court to establish the presence of personal
10   jurisdiction in that court." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001).
11   Jurisdictional discovery is particularly appropriate when "pertinent facts bearing on the
12   question of jurisdiction are controverted or where a more satisfactory showing of the facts
13   is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data
14   Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir.1977)).  On the
15   other hand, "[w]here a plaintiff's claim of personal jurisdiction appears to be both
16   attenuated and based on bare allegations in the face of specific denials made by the
17   defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v.
18   Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49
19   F.3d 555, 562 (9th Cir. 1995)); *see also LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th
20   852, 864 (9th Cir. 2022) ("A mere hunch that discovery might yield jurisdictionally
21   relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for
22   a court to grant jurisdictional discovery." (cleaned up)).

23           Here, Plaintiff has not shown that jurisdictional discovery is appropriate.  To the
24   extent Plaintiff's request seeks information about whether Defendant Bykhovsky knew that
25   the telemarketing calls were aimed at, or would cause harm in, the forum, such discovery
26   could not cure the specific deficiency noted above.  As discussed above, the FAC fails to
27   sufficiently allege that Defendant Bykhovsky engaged in an intentional act.  Plaintiff's
28   argument lacks sufficient detail to support a finding that discovery would unearth facts

specific to the jurisdictional deficiency discussed here.  For example, it is not clear what Plaintiff means when he states, "[i]f Bykhovsky's records indicate a California or no address, jurisdiction is proper here."  *See* (Opp. at 9–10).  Plaintiff's request for "information [Defendant] Bykhovsky relied upon to place the telemarketing calls to Plaintiff" similarly lacks specificity.  At bottom, it is not clear based on these arguments that additional information would be ascertained that would cure the deficiency of the FAC. Therefore, the Court denies, without prejudice, Plaintiff's request for jurisdictional discovery.

## C.   Plaintiff's Motion for Leave to Amend to File a SAC

While Defendant Bykhovsky's Motion was pending, Plaintiff filed a motion for leave to file a SAC.  For the proposed SAC, Plaintiff seeks to add: (1) allegations of additional telephone calls and text messages occurring after August 18, 2023, the date Plaintiff filed the FAC, *see* (ECF No. 48-1 ("PSAC") ¶¶ 186–94); and (2) four additional Defendants—namely, Texas and Wyoming corporate entities of a company called Chriz Biz Services, LLC, ("CBS"), their officer, Christopher Gutierrez Cuenza,[6] and Alex Gold Holdings, LLC ("AGH"), which is a "Nevada revoked entity" of which Defendant Bykhovsky is a managing member.  *See* (PSAC ¶¶ 11–12; MFLA at 4–5).  Plaintiff contends that AGH is an alter ego of Defendant Unplugged Media and is among the "interrelated network of companies" owned by Defendant Bykhovsky that allegedly participate in the telemarketing conduct alleged in the FAC and proposed SAC.  (*Id.*). Plaintiff represents, in his motion, that Defendant Bykhovsky consented to Plaintiff filing the proposed SAC.

### 1.   Legal Standard

---

[6] Plaintiff learned of Cuenza through a conversation with Defendant Bykhovsky, during which Bykhovsky purportedly "stated in part that Bykhovsky worked with Cuenza on the telemarketing conduct and the operation of the calls."  (MFLA at 5).  Plaintiff also states that Cuenza is the individual who is mailing Defendant Bykhovsky's documents to this Court and  that Cuenza uses a Los Angeles address.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, the Ninth Circuit has mandated that the rule be applied with "extreme liberality." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (citation omitted). A court considers five factors to determine whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) the futility of amendment, and (5) whether the plaintiff has previously amended his or her complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "Prejudice is the touchstone of the inquiry under rule 15(a)," which the non-moving party bears the burden of establishing. *Eminence Capital*, 316 F.3d at 1052 (internal quotation marks and citation omitted). Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (emphasis in original).

2. <u>Analysis</u>

Here, Defendant Bykhovsky—the only non-defaulting Defendant—consents to Plaintiff filing a SAC and has identified no prejudice that he will suffer if the SAC is filed. Likewise, based on the current record, the Court finds that prejudice is not likely to occur if the Court grants Plaintiff leave to file the SAC because the case is still in the pleading stage. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding amendment prejudicial where the proposed changes would "greatly alter[] the nature of the litigation" and require the opposing party to "undertake[], at a late hour, an entirely new course of defense"); *see also Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103–04 (C.D. Cal. 2011) (finding amendment prejudicial with discovery complete and trial only three months away).

Further, none of the other factors identified in *Nunes v. Ashcroft* overcome Rule 15(a)'s presumption in favor of granting Plaintiff leave to amend the FAC to add

additional calls, text messages, and Defendants.  In particular, there is no indication that Plaintiff's motion is made in bad faith.  Similarly, the newly-alleged phone calls and text messages all occurred after August 18, 2023, the date Plaintiff filed the FAC, *see* (ECF No. 48-1 ("PSAC") ¶¶ 186–94), and there is no evidence that Plaintiff unduly delayed adding the new Defendants.  Further, there is no evidence that amendment as to these later-occurring phone calls or text messages or the additional Defendants would be futile.  Finally, there is no indication that Plaintiff has "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed," *Foman*, 371 U.S. at 182; instead, though Plaintiff previously amended his pleadings once, he did so as a matter of course before any Defendant had answered, making this is only the first amendment sought from the Court.

In sum, there is no "strong showing" of any of the remaining *Nunes* factors, and Rule 15(a)'s presumption in favor of granting leave to amend prevails.  Therefore, the Court grants Plaintiff's motion for leave to file a SAC.  However, because Plaintiff lodged the proposed SAC with the Court before this Order identifying deficiencies in the FAC was issued, the Court denies Plaintiff's motion insofar as it seeks to file the lodged proposed SAC, (ECF No. 48-1), and instead orders Plaintiff to file a SAC consistent with this Order.

## III.   CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

(1)   Defendant's unopposed Motion to Set Aside Entry of Default is GRANTED;

(2)   Defendant's Motion to Dismiss For Lack of Personal Jurisdiction is GRANTED and the FAC is DISMISSED without prejudice;

(3)   Plaintiff's Motion for Leave to File a Second Amended Complaint is GRANTED insofar as Plaintiff seeks leave to amend the identified allegations and additional Defendants, and DENIED insofar as Plaintiff seeks to file the lodged proposed SAC, (ECF No. 48-1); and

(4)   Plaintiff shall file a Second Amended Complaint an amended complaint in compliance with this order within twenty-one (21) calendar days of the date that this order is entered on the docket.

Finally, the Court notes that, though both Defendant Bykhovsky and Plaintiff represent themselves, they are nonetheless required to comply with Court orders, the Federal Rules of Civil Procedure, the Local Rules, *see* C.D. Cal. L.R. 83-2.2.3, and this Court's Standing Order for Civil Cases.[7]  In accordance with those rules, the parties must in good faith attempt to meet and confer before filing motions. C.D. Cal. L.R. 7-11. Failure to comply with any of the rules or this Court's orders may result in the Court, on its own accord, imposing sanctions.

**IT IS SO ORDERED.**

DATED:  July 12, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[7]  The Local Rules are available on the Court's website, http://www.cacd.uscourts.gov/court-procedures/ local-rules. The Court cannot provide legal advice to any party, including parties who are not represented by a lawyer. There is a free "Pro Se Clinic" that can provide information and guidance about many aspects of civil litigation in this Court. The Clinic is located at the Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, CA 90012. Pro se litigants must call or submit an on-line application to request services as follows: on-line applications can be submitted at http://prose.cacd.uscourts.gov/los-angeles, or call (213) 385-2977, ext. 270.