# EXHIBIT 2

# EXHIBIT 2

Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JORGE ALEJANDRO ROJAS,

                Plaintiff,

     v.

~~BOTTOM LINE CONCEPTS, LLC,~~
~~JOSHUA FOX,~~ UNPLUGGED MEDIA,
LLC, ~~and~~ ALEXANDER BYKHOVSKY
aka ALEX GOLD, CHRIS BIZ
SERVICES, LLC (as a Wyoming
company), CHRIS BIZ SERVICES, LLC
(as a Texas company), CHRISTOPHER
GUTIERREZ CUENZA aka CHRIS
CUENZA, and ALEX GOLD
HOLDINGS, LLC,

                Defendants[1].

Case No. 2:23-cv-02667-SPG-KS

  District Judge Sherilyn Peace Garnett
  Magistrate Judge Karen L. Stevenson

**[PROPOSED][2] SECOND AMENDED
COMPLAINT FOR:**

1. VIOLATIONS OF THE TELEPHONE
CONSUMER PROTECTION ACT, 47
U.S.C. § 227

---

[1] Defendants Chris Biz Services, LLC (as a Wyoming Company) and Chris Biz Services, LLC (as a Texas company), Christopher Gutierrez Cuenza aka Chris Cuenza, and Alex Gold Holdings, LLC, are new parties. Plaintiff adds an aka alias to Alexander Bykhovsky.

[2] Plaintiff files this proposed Second Amended Complaint in response to the Court's July 12, 2024 Order (Dkt. 56) – in an attempt to address the deficiencies noted in that Order

-1-

Plaintiff, Jorge Alejandro Rojas, files this Second Amended Complaint[3] under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations codified at 47 C.F.R. § 64.1200, against Defendants ~~Bottom Line Concepts, LLC ("Bottom Line"), Joshua Fox ("Fox"),~~ Unplugged Media, LLC ("Unplugged Media"), ~~and~~ Alexander Bykhovsky aka Alex Gold ("Bykhovsky"), Chris Biz Services, LLC (as separate Wyoming and Texas companies) (collectively, "CBS"), Christopher Gutierrez Cuenza aka Chris Cuenza ("Cuenza"), and Alex Gold Holdings, LLC ("AGH"), collectively "Defendants", and alleges based on personal knowledge and information and belief, as follows:

## **INTRODUCTION**

1.      As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R § 64.1200.

---

with respect to Plaintiff's allegations of personal jurisdiction as it related to Defendant Bykhovsky.

[3] Plaintiff ~~files this Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A). The substantive changes include the addition of parties and additional counts as a result of additional calls received by the Plaintiff since the filing of the original Complaint.~~ seeks leave to amend because one party (Unplugged Media) currently in the action has defaulted and Plaintiff is unable to obtain their position on amendment. Prior to filing the first version of the proposed SAC on March 10, 2024, Defendant Bykhovsky has represented to Plaintiff he consents to amendment. Since then, Plaintiff has been unable to communicate with Defendant Bykhovsky.

3.     This case involves a campaign by Defendants to obtain business via itself or affiliates making telemarketing calls concerning the employee retention credit grant.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5.     This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of California. Specifically, the Defendants conduct significant business in the State. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6.     Plaintiff was located within this district, while traveling to Torrance, CA, when he received the first phone call at issue in this action. Moreover, Plaintiff's telephone number is a 424, District number, which demonstrates that Defendants have purposefully directed their activities at this forum.

7.     Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8.     Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff was located within this district on travel when he received the first telephone call at issue.

9.     Defendant Bottom Line Concepts, LLC ("Bottom Line") is a Florida entity, with a principal address of 3323 NE 163rd Street Suite 302 North Miami Beach, FL 33160, and a registered agent of Joshua Fox, located at the same.

10.     Defendant Joshua Fox ("Fox") is a Manager of Defendant Bottom Line and is located at the same address.

11.9.  Defendant Unplugged Media, LLC, ("Unplugged Media") is a Puerto Rican entity, with a main office of 954 Ave Ponce de Leon, Suite 205 - PMB 10560, SAN JUAN, PR, 00907, and a Resident Agent of PRelocate, LLC, located at the same address.

-3-

10.   Defendant Alexander Bykhovsky aka Alex Gold ("Bykhovsky") is an Authorized Person of Defendant Unplugged Media and upon information and belief may be located at 1800 Calle McLeary Apt 402, San Juan, PR 00911, or at Unplugged Media's address.

11.   Defendant Chris Biz Services, LLC ("CBS") is a Texas entity with a registered agent of Northwest Registered Agent, LLC located at 5900 Balcones Dr Ste 10, Austin, TX 78731 and a principal address of the same.

12.   Defendant Chris Biz Services, LLC ("CBS") is a Wyoming entity with a registered agent of Cloud Peak Law, LLC located at 1095 Sugar View Dr Ste 500 Sheridan, WY 82801 and a principal address of 1309 Coffeem Ave Ste 1200 Sheridan, WY 82801.

13.   Defendant CBS also transacts business from 228 S. Avenue 18 Unit E Los Angeles, CA 90031.

14.   One of CBS' websites states that its principal place of business is California and that any disputes are governed by California law.

15.   Defendant Christopher Gutierrez Cuenza aka Chris Cuenza ("Cuenza") is an officer and Managing Member of CBS and is located within this District, and is located at 228 S. Avenue 18 Unit E Los Angeles, CA 90031.

~~12.~~16. Defendant Alex Gold Holdings, LLC ("AGH") is a Nevada entity[4] with a registered agent of Alexander Bykhovsky at 3064 Kishner DR, 111, Las Vegas, NV, 89109, although upon information and belief Bykhovsky is not located to accept service of process there. AGH has a Managing Member of Alexander Bykhovsky and lists an address of 3555 Pecos Mcleod Interconnect, Las Vegas, NV, 89121 with the Nevada Secretary of State.

---

[4] AGH was a Nevada revoked entity at the time Plaintiff lodged the March 10, 2024 version of the SAC. The Nevada Secretary of State's records indicate that on or about March 23, 2024, AGH became a re-instated entity. Plaintiff therefore corrects this representation in this proposed SAC.

13.17. Defendants are each a person as defined by 47 U.S.C. § 153(39).

14.18. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

### STATUTORY BACKGROUND

15.19. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

16.20. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

17.21. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

18.22. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

19.23. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or

investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

20.24. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

21.25.   The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

22.26.   A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

23.27.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R § 64.1200(c)(2).

24.28.   The TCPA requires entities and persons engaging in telemarketing meet minimum standards, including training their personnel concerning the rules regarding telemarketing. 47 C.F.R. §§ 64.1200(d)(1)-(d)(3); 47 C.F.R. § 64.1200(b).

25.29.   The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

26.30.   The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

27.31.   The TCPA's implementing regulations require providing a do not call policy upon request. 47 C.F.R § 64.1200(d)(1).

28.32.   The TCPA's implementing regulations require recording and maintaining do not call requests. 47 C.F.R §§ 64.1200(d)(1), (d)(6).

29.33. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

34.   When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

30.35. Numerous district courts have held that corporate actors may be held individually liable for violating the TCPA where they "'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12-cv-2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014) (quoting *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-00253, 2012 WL 4074620 (W.D. Mich. June 21, 2012); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1321 (D. Wyo. 2011); *Baltimore-Wash.*

*Tel. Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D. Md. 2008)   *Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198-DAD-SAB, at *3-4 (E.D. Cal. June 24, 2016).

31.36. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

32.37. Employees can be held liable in TCPA actions for unlawful conduct.

33.38. The individual defendant in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

## FACTUAL ALLEGATIONS

34.39. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582 ("1582 Line").

35.40. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (331) XXX-6308 ("6308 Line").

36.41. The phone numbers listed above are not associated with a business and are used by Plaintiff solely.

37.42. Plaintiff is the account holder and customary user of his phone numbers.

38.43. Plaintiff registered the 1582 Line phone number on the Federal Do Not Call Registry on or around January 18, 2008.

39.44. Plaintiff registered the 6308 Line phone number on the Federal Do Not Call Registry on or around March 22, 2023.

40.45. Plaintiff registered his phone numbers on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his phone for legitimate purposes.

41.46. Plaintiff also alleges that Defendants may have made other telephone calls prior to the Call 1 identified below, which will be identified further in discovery.

42.47.While Plaintiff was located within this District when he received the first telephone call, the remaining telephone calls were primarily received while he was located in Bolingbrook, Illinois.

48.    Plaintiff asserts that this Court has jurisdiction over the parties, given that the Defendants called Plaintiff at his 424-area code telephone number a substantial number of times.

49.    Defendants also called Plaintiff using in district telephone numbers at times.

50.    Defendant Cuenza presently resides in this District, and has in fact been mailing documents from Bykhovsky to Plaintiff via USPS mail.

51.    Defendant BYKHOVSKY has conducted activities within the forum state, including hiring, directing, instructing, or otherwise causing Cuenza to mail Plaintiff items to defend this case on his behalf.

52.    Defendant BYKHOVSKY has a direct nexus to this forum. Defendant BYKHOVSKY has directed others and acted as the mastermind behind the telemarketing calls alleged in this action, including placing calls within this district, and as a result purposefully availed himself with this forum by making telephone calls to Plaintiff who has a local in district telephone number.

53.    Plaintiff has communicated with Defendant BYKHOVSKY utilizing the email of "alexgoldlv@gmail.com" – and not a company or other email – further demonstrating personal involvement in the actions. If Defendant BYKHOVSKY was not personally participating in these actions, he would be using a company e-mail and use that to separate himself from the business' operations.

54.    Defendant CBS is also present within this District, because it is or at one point was engaging in business with Unplugged Media and Bykhovsky, who was making telemarketing calls to numbers in this District.

55.    CBS, Cuenza, Bykhovsky, and Unplugged Media have conducted business transactions in this District and have committed tortious acts in this District.

56.    Plaintiff references CBS as both the Wyoming and the Texas entity.

43.57. CBS in Wyoming is Inactive and Administratively Dissolved due to Tax reasons as of this filing.

58. ~~Defendant~~ Bottom Line Concepts LLC has been sued for similar conduct in the past. *See Callier v. Bottom Line Concepts, LLC,* W.D. Tex., 3:23-cv-00180 (May 1, 2023); *Blakc v. Bottom Line Concept LLC*, N.D. Ala., 4:23-cv-00553 (May 1, 2023); *Baughman et al v. Bottom Line Concepts LLC,* S.D. Fla., 1:23-cv-21862 (May 18, 2023); *Fridline v. Bottom Line Concepts, LLC*, M.D. Pa., 4:23-cv-01193 (July 18, 2023); *Trupia v. Bottom Line Concepts, LLC, et al,* Florida Dade, 2023-021229-CA-01 (August 8, 2023); *Martin v. Bottom Line Concepts, LLC,* S.D.N.Y., 1:23-cv-08510 (September 27, 2023), *Julian v. Bottom Line Concepts, LLC,* D. Kan., 2:23-cv-02493. (November 7, 2023).

44.59. Plaintiff alleges that Bykhovsky and Cuenza engaged in the telemarketing activities, together with their companies CBS, AGH, and Unplugged Media, for the benefit of others, including Bottom Line Concepts ("Bottom Line").

60. Defendant ALEXANDER BYKHOVSKY has been sued in the past for telemarketing activities, including in *Callier v. BYKHOVSKY*, W.D. Tex., 3:22-CV-00312-DB (September 6, 2022).

61. Defendant BYKHOVSKY has a suspended (by the CA Franchise Tax Board) entity named "Document Preparation Made Easy," with an address of 3500 W. OLIVE AVE. STE 300 BURBANK, CA 91505, suspended on 12/2/2019, but a statement of information submitted after that, dated 12/28/2020. Defendant BYKHOVSKY lists himself as the registered agent, with the same address 3500 W. OLIVE AVE. STE 300 BURBANK, CA 91505 for service of process.

62. Defendant Cuenza and CBS, as a Wyoming company, have been sued in the past for alleged TCPA violations. *Schmidt v. Chris Biz Services, LLC,* S.D. Fl., 2:23-cv-14284-DMN (December 7, 2023).

63. Cuenza, in an affidavit filed in another case on December 7, 2023, has stated that he is a resident of this District. This affidavit was filed in an effort to dismiss a case

for lack of personal jurisdiction which was filed in Florida. *Schmidt v. Chris Biz Services, LLC,* S.D. Fl., 2:23-cv-14284-DMN (Dkt. 23 ("Cuenza Affidavit") ¶ 2 ("I am a resident of the County of Los Angeles, State of California.")

64.   Cuenza styled his filing as an Affidavit but did not have a notary attest to the identity of the signer. However the Affidavit contained the 28 U.S.C. § 1746 statement declarations require.

65.   In the Cuenza Affidavit, Cuenza states "On or about May 2023, Plaintiff [sic] became aware of prerecorded phone calls being made to market Employee Retention Credit ("ERC") and launched an investigation" ¶ 5, "On or about July 2023, Plaintiff [sic] concluded this investigation and fired the manager who had approved and initiated the dialing campaign and had designed the website https://chrisbizservices.com" ¶ 6, "On or about July 2023, I fired all of the employees that personally participated in the dialing campaign" ¶ 7.

66.   Plaintiff believes that Cuenza meant to write Defendant where he wrote Plaintiff, because the allegations were that Cuenza, the Defendant, was the one participating in the illegal telephone calls.

67.   Cuenza admits in the affidavit that as early as May 2023 he became aware of prerecorded phone calls – which is around the time of the first call in this action.

68.   Plaintiff believes that the people Cuenza refers to having "fired" include Defendant Bykhovsky and his companies.

69.   Cuenza's Affidavit, which was filed when the Wyoming CBS was sued, admits that Cuenza is an officer of CBS Wyoming.

70.   In a July 23, 2023 website capture of the website https://ercfederalcredit.com/, Bottom Line Concepts logo and name are used, and the footer includes "Copyright 2023 Chris Biz Services. All rights reserved." https://web.archive.org/web/20230723005153/https://ercfederalcredit.com/.

71.    The Privacy Policy contained on the July 23, 2023 capture includes multiple references to Unplugged Media, LLC, and the address of the registered agent. https://web.archive.org/web/20230723005507/https://ercfederalcredit.com/privacy/.

72.    The Privacy Policy contained on the July 23, 2023 capture includes a statement that "Company is a California limited liability company with its principal place of business in California and therefore governed by the laws of the State of California. User and Company agree and acknowledge that the exclusive venue and jurisdiction of any claim or dispute arising out of or relating to Website or the use thereof shall be brought in the state and federal courts located in Los Angeles County, California." *Id.*

73.    Coincidentally, the website ercfederalcredit.com has since been modified to remove references to Chris Biz Services and Unplugged Media.

74.    The text "Chris Biz Services" on the website ercfederalcredit.com was a link to http://chrisbizservices.com.

75.    A September 2023 version of the Chris Biz Services website included language of "Trust us as your premier call center service provider, offering unparalleled support and unmatched quality for your business. ChrisBiz Services offers a range of solutions in their call center, including the efficient Call Hub powered by VICI Avatar, Voice Broadcasting (VB) for simultaneous delivery of pre-recorded voice messages, non-intrusive Ringless Voicemail (RVM) directly to customers' devices, and comprehensive DATA services for data collection, analysis, and management. These services streamline call handling, enhance customer interactions, and provide valuable insights to optimize business operations." https://web.archive.org/web/20230921100703/https://chrisbizservices.com/.

76.    Now, Chris Biz Services website instead states it does "Legal Solutions, Tailored For You," including "From conducting in-depth legal research and drafting meticulous documents to providing expert compliance consulting, risk management

strategies, and technological optimization, we ensure your legal processes are seamless and efficient." http://chrisbizservices.com.

45.77.Cuenza's LinkedIn page includes time working at the "Student Loan Forgiveness Center" between November 2021 and December 2023 and "The Student Loan Doctor LLC" from January 2020 to November 2022.

46.78.In at least one of Bykhovsky's prior cases, the allegation was that he and coconspirators have opened at least 40 companies as part of a student loan telemarketing fraud scheme. The allegations in that case also included that the individual Defendants comingled corporate funds with their personal funds and were one and the same entity.

79.   Defendant Bottom Line and its officers hire or contract with call centers and lead providers, including Unplugged Media, to perform telemarketing on its behalf. Plaintiff believes the pre-recorded messages left on his voicemail were pre-recorded, and the calls that he in fact answered were pre-recorded, for reasons including (a) there was a pause before the recording played and the robot started speaking and (b) the robot had a generic monotone voice.

80.   In 2020, Congress created the Employee Retention Credit ("ERC") tax break to reward businesses and nonprofits for keeping employees on payroll during the pandemic.

81.   Companies such as Bottom Line work with individuals and businesses to claim the tax credit.

82.   The Defendants in this action advertised Bottom Line's products and/or services, which constitutes telemarketing and telephone solicitations.

47.83.The Defendants in this action relied on Bottom Line's "Referral Partners" program – which provides a 10% kickback to the entity which does the referral to Bottom Line.

84.   The pre-recorded calls and messages alleged in this action did not properly identify the caller.

85.   CBS was not formed until June 2, 2023.

86. Cuenza and Bykhovsky nevertheless performed business operations together in at least one or more of the telephone calls alleged in this action, even those made prior to CBS' corporate formation.

87. CBS and Cuenza place telephone calls for multiple companies including Bottom Line.

88. During a telephone call between Plaintiff and Bykhovsky, Bykhovsky stated that he worked with Cuenza and CBS, including with providing assistance with making a website for Cuenza and CBS – including the website provided to Plaintiff by the telemarketer during one of the telephone calls.

89. Bykhovsky has stated his location to be Puerto Rico in Court filings made in this Court. Dkt. 40 p. 2, stricken, ("Bykhovsky is a Puerto Rico resident.")

90. Bykhovsky has stated his location to be Panama in Court filings made in this Court. Dkt. 46, p. 2, ("Bykhovsky is a Panama resident.")

91. Whether Bykhovsky is a resident of Panama or Puerto Rico, Bykhovsky continues to transact business within this district, including by having Cuenza file documents in Court on his behalf.

92. Bykhovsky e-mailed Plaintiff on February 17, 2024, at 8:17 AM Pacific time, and the email provided a screenshot of what appears to be a Google Docs file of Bykhovsky's first motion to dismiss. The screenshot included a timestamp of 12:17.

93. Panama does not recognize Daylight Savings Time. https://www.timeanddate.com/worldclock/panama/panama.

94. On February 17, 2024, Panama was on the Eastern Time zone, and the time would have been 11:17 AM at 8:17 AM PT, but the time stamp on the screenshot of the phone was 12:17 PM.

95. On February 17, 2024, San Juan, Puerto Rico was on the AST, UTC-4 time zone, and it would have been 12:17 PM at 8:17 AM PT.

48.96. Plaintiff believes that it is more likely than not that Bykhovsky is misleading the Court and Plaintiff concerning his true location.

49.97. Plaintiff includes some of the transcriptions provided by his phone as to some of the calls received. The transcriptions may be subject to errors.

50.98. Each Defendants Unplugged Media and BYKHOVSKY is are liable for the telephone calls they placed directly by themselves or at their direction, and/or vicariously liable for any telephone calls placed by others. .

51.   Defendants Bottom Line Concepts and Fox are liable for the calls made by Defendants Unplugged Media and BYKHOVSKY and others vicariously.

52.   Upon information and belief, Defendants Bottom Line Concepts and Fox controlled Defendants Unplugged Media and BYKHOVSKY.

53.   Defendants Bottom Line Concepts and Fox ratified Defendants Unplugged Media and BYKHOVSKY conduct — for reasons including, based upon information and belief, that they had actual knowledge of the material facts of the agent's act, or should have known of the actual facts because a reasonable person under the circumstances would have "investigate[d] further."

54.   Defendants Bottom Line Concepts and Fox also exercised apparent authority and controlled and benefited from the operations of Unplugged Media and BYKHOVSKY.

55.99. **Call 1.** On or about April 3, 2023, at 2:06 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

56.100.    Plaintiff missed this call.

57.101.    Defendants left a pre-recorded voicemail, of a female, advertising the services of the Defendants employee retention credit processing services. The voicemail provided a call back number of the same number which called Plaintiff.

58.102.    Plaintiff was on travel within this District when he received the telephone call.

*See Luna v. Shac, LLC*, 2014 U.S. Dist. LEXIS 96847, *11 (N.D. Cal. July 14, 2014) (finding purposeful direction "where Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Shac expressly aimed its conduct at California."). *Branham v. ISI Alarms, Inc*., 2013 U.S. Dist. LEXIS 124933, *28 (E.D. N.Y. Aug. 30, 2013) (holding that the defendants should have anticipated that the use of a system "to call a New York cell-phone number could subject them to being hauled into court in New York.").

59.103.    Plaintiff called the number back on April 4, 2023. Plaintiff ultimately spoke with a Dylan Jenkins who identified the company as Bottom Line Concepts and e-mailed Plaintiff an email from an email of dylan@bottom-lineconcepts.com.

60.104.    The domain bottom-lineconcepts.com was registered on or about October 20, 2022. *See https://www.whois.com/whois/bottom-lineconcepts.com*.

61.105.    A May 9, 2023 archived copy of the Privacy Policy for the website domain          bottom-lineconcepts.com,          available          at https://web.archive.org/web/20230509095039/https://www.bottom-lineconcepts.com/privacy/, identifies the entity name Unplugged Media, LLC, and its Puerto Rico address, throughout.

106.   Plaintiff sues Unplugged Media, LLC, and its officer/member ALEXANDER BYKHOVSKY because at least one of the telephone calls were made by Unplugged Media, LLC, for the benefit of Bottom Line Concepts and its officers.their benefit, as they would get a kick back from any ultimate transaction.

107.   BYKHOVSKY also goes by the name Alex Gold.

62.108.    Plaintiff sues CBS and its officer/member Cuenza because at least one of the telephone calls were made by CBS and Cuenza for their benefit.

63.109.    During the telephone call, Defendant provided a website of https://www.bottomlinesavings.com. The website logo matches that which was included in the email from Dylan.

-16-

64.110.      The website bottomlinesavings.com was registered on or about July 20, 2001. *See* https://www.whois.com/whois/bottomlinesavings.com.

65.111.      The voicemail left by the Defendants did not identify Bottom Line or Unplugged Media during the voicemail – instead they identified themselves as "Debiton."

112.   This failure to identify also demonstrates the conduct alleged herein was done in a knowingly and/or willful manner.

66.113.      The failure to identify violates the TCPA's implementing regulations.

67.114.      A search online of the telephone number which made the call reveals that other individuals other than the Plaintiff have gotten telephone calls from the same number at issue here. *See* https://lookup.robokiller.com/p/786-936-1984 (noting 1,541 calls as of April 8, 2023).

68.115.      **Call 2.** On or about April 12, 2023, at 9:52 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

69.116.      **Call 3.** On or about April 12, 2023, at 9:53 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 908-327-6911 on Plaintiff's caller ID.

70.117.      **Call 4.** On or about April 12, 2023, at 2:38 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 908-327-6911 on Plaintiff's caller ID.

71.118.      The voicemail in the above call stated "Exciting news Deborah Tim has an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business we don't want you to miss out on this opportunity so please call us back now at 7869361984 to speak with a specialist who

can guide you through the application process and help you secure this free grant this may be your last chance to receive this funding so don't wait again that's 786-9361984 to get connected with a specialist act now to secure your business his financial future…"

72.119.　　On or about April 12, 2023, at 4:17 PM Pacific time, Plaintiff e-mailed Dylan with a copy of the Complaint in this action, and an explicit request to cease calling Plaintiff's telephone numbers ending in 1582 and 6308. Plaintiff also requested Dylan send Plaintiff a copy of Defendants do not call policy.

73.120.　　Plaintiff, as of this filing, has not received a response from Dylan or Defendant concerning the addition to the internal do not call list nor has Plaintiff been provided a copy of their do not call policy.

74.121.　　On or about April 13, 2023, Plaintiff sent ~~Defendant~~ Bottom Line Concepts and ~~Mr. Fox~~one of its officers a written do not call request to their registered agent and/or last known address.

75.122.　　The April 13, 2023, request was similarly ignored, like the April 12, 2023, request.

76.123.　　**Call 5.** On or about April 13, 2023, at 11:02 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000  on Plaintiff's caller ID.

77.124.　　**Call 6.** On or about April 14, 2023, at 10:47 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

78.125.　　**Call 7.** On or about April 14, 2023, at 10:47 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

-18-

79.126.    The voicemail from this call was pre-recorded and stated "Exciting news Deb Tim has an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business we don't want you to miss out on this opportunity so please call us back now at 7869361984 to speak with a specialist who can guide you through the application process and help you secure this free grant this may be your last chance to receive this funding so don't wait again that's 786-9361984 to get connected with a specialist act now to secure your business his financial future…"

80.127.    **Call 8.** On or about April 14, 2023, at 2:30 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 908-327-6911 on Plaintiff's caller ID.

81.128.    The voicemail from this call was pre-recorded and stated "Exciting news Deborah Tim has an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business we don't want you to miss out on this opportunity so please call us back now at 7869361984 to speak with a specialist who can guide you through the application process and help you secure this free grant this may be your last chance to receive this funding so don't wait again that's 786-9361984 to get connected with a specialist act now to secure your business his financial future…"

82.129.    **Call 9.** On or about April 17, 2023, at 9:54 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

83.130.    **Call 10.** On or about April 17, 2023, at 9:57 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

84.131.    **Call 11.** On or about April 18, 2023, at 10:56 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

85.132.    **Call 12.** On or about April 19, 2023, at 11:10 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

86.133.    **Call 13.** On or about April 19, 2023, at 2:00 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

87.134.    **Call 14.** On or about April 19, 2023, at 2:00 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

88.135.    **Call 15.** On or about April 20, 2023, at 9:44 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 802-214-8475 on Plaintiff's caller ID.

89.136.    When Plaintiff answered the phone, he heard a female pre-recorded message which included references to "Debiton"

90.137.    **Call 16.** On or about April 20, 2023, at 2:59 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

91.138.    **Call 17.** On or about April 21, 2023, at 12:09 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent,

affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

92.139.　　**Call 18.** On or about April 21, 2023, at 2:28 PM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

93.140.　　**Call 19.** On or about April 25, 2023, at 8:22 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 701-504-7748 on Plaintiff's caller ID.

94.141.　　When Plaintiff answered this call, he heard a female pre-recorded message play which included references to "debiton" and employee grant programs.

95.142.　　**Call 20.** On or about April 25, 2023, at 11:12 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000  on Plaintiff's caller ID.

96.143.　　**Call 21.** On or about April 25, 2023, at 11:13 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

97.144.　　**Call 22.** On or about April 25, 2023, at 11:46 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-1984 on Plaintiff's caller ID.

98.145.　　**Call 23.** On or about April 25, 2023, at 11:59 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000  on Plaintiff's caller ID.

99.146.        **Call 24.** On or about April 26, 2023, at 10:37 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 225-455-1560 on Plaintiff's caller ID.

100.147.        When Plaintiff answered this call, a female pre-recording played, which included references to "debiton."

101.148.        **Call 25.** On or about May 2, 2023, at 9:20 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 201-354-1941 on Plaintiff's caller ID.

102.149.        **Call 26.** On or about May 2, 2023, at 9:21 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 201-354-1941 on Plaintiff's caller ID.

103.150.        Plaintiff missed this call, and the pre-recorded message left on his voicemail stated "Exciting news debit Tim has an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business we don't wanna even miss out on this opportunity so please call us back now at 650-7021059 to speak with a specialist who can guide you through the application process and help you secure this free grant this may be your last chance to receive this funding so don't wait again that's 650702-1059 to get connected with a specialist act now to secure your business his financial future…"

104.151.        **Call 27.** On or about May 3, 2023, at 8:21 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 620-350-0012 on Plaintiff's caller ID.

105.152.        When Plaintiff answered this call, he heard a female pre-recording who identified herself as "Mika" and who stated that they were with "Patriot Tax" and

offering 26,000 per employee. The call was similar to the other calls Plaintiff received which he was able to identify as being made by the Defendants in this case.

106.153.    **Call 28.** On or about May 3, 2023, at 10:31 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000  on Plaintiff's caller ID.

107.154.    **Call 29.** On or about May 3, 2023, at 11:49 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000  on Plaintiff's caller ID.

108.155.    **Call 30.** On or about May 3, 2023, at 11:50 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 650-780-3601 on Plaintiff's caller ID.

109.156.    **Call 31.** On or about May 3, 2023, at 11:56 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 304-301-0792 on Plaintiff's caller ID.

110.157.    When Plaintiff answered this call, he heard a female pre-recording who identified themselves as "Mika" with "Patriot Tax" with a similar recording as the other calls alleged in this action.

111.158.    **Call 32.** On or about May 3, 2023, at 12:06 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

112.159.    **Call 33.** On or about May 3, 2023, at 12:07 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent,

-23-

affiliate, or call center acting on their behalf, from a number that displayed as 201-354-1941 on Plaintiff's caller ID.

113.160.    **Call 34.** On or about May 3, 2023, at 1:21 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

114.161.    **Call 35.** On or about May 3, 2023, at 1:22 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 650-780-3601 on Plaintiff's caller ID.

115.162.    Plaintiff missed this call, and the voicemail left on his phone was of a female pre-recording which stated "Attention business owners Deborah Tim has discovered an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business don't miss out on this opportunity to secure free grant funding call us now at 6503923195 to speak with a specialist and guide you through the application process time is limited so act fast to secure your business is financial future again call us back at 650-392-3195 thanks a lot and talk to you soon…"

116.163.    **Call 36.** On or about May 4, 2023, at 10:17 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

117.164.    **Call 37.** On or about May 4, 2023, at 10:18 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 650-780-3601 on Plaintiff's caller ID.

118.165.    **Call 38.** On or about May 4, 2023, at 1:31 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent,

affiliate, or call center acting on their behalf, from a number that displayed as 650-780-3601 on Plaintiff's caller ID.

119.166.      **Call 39.** On or about May 4, 2023, at 1:31 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

120.167.      **Call 40.** On or about May 5, 2023, at 10:45 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 650-780-3601 on Plaintiff's caller ID.

121.168.      **Call 41.** On or about May 8, 2023, at 2:23 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 832-884-4709 on Plaintiff's caller ID.

122.169.      Plaintiff missed this call, but the voicemail left on his phone was a pre-recorded message of "Attention business owners debit Tim has discovered an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business don't miss out on this opportunity to secure free grant funding call us now at 6503923195 to speak with a specialist and guide you through the application process time is limited so act fast to secure your business is financial future again call us back at 650-392-3195 thanks a lot and talk to you soon…"

123.170.      **Call 42.** On or about May 9, 2023, at 8:05 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 936-251-2592 on Plaintiff's caller ID.

124.171.      **Call 43.** On or about May 9, 2023, at 8:06 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent,

affiliate, or call center acting on their behalf, from a number that displayed as 936-251-2592 on Plaintiff's caller ID.

125.172.     Plaintiff missed this call, but the voicemail left on his phone was a pre-recorded message which stated the following "Attention business owners debit Tim has discovered an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business don't miss out on this opportunity to secure free grant funding call us now at 6503923195 to speak with a specialist and guide you through the application process time is limited so act fast to secure your business is financial future again call us back at 650-392-3195 thanks a lot and talk to you soon…"

126.173.     **Call 44.** On or about May 9, 2023, at 10:48 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

127.174.     **Call 45.** On or about May 10, 2023, at 10:47 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

128.175.     **Call 46.** On or about May 10, 2023, at 10:47 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 931-203-7365 on Plaintiff's caller ID.

129.176.     Plaintiff missed this call, but the voicemail left on his phone was a pre-recorded message which stated "Attention business owners debit Tim has discovered an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business don't miss out on this opportunity to secure free grant funding call us now at 6503923195 to speak with a specialist and guide you through the application process time is limited so act fast to secure your business is financial future again call us back at 650-392-3195 thanks a lot and talk to you soon…""

130.177.     **Call 47.** On or about May 10, 2023, at 1:23 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 405-335-1284 on Plaintiff's caller ID.

131.178.     Plaintiff missed this call, but the voicemail left on his phone was a pre-recorded message which stated "Attention business owners Deborah Tim has discovered an urgent notice regarding your grant application that can provide funding of up to $26,000 per employee for your business don't miss out on this opportunity to secure free grant funding call us now at 6503923195 to speak with a specialist and guide you through the application process time is limited so act fast to secure your business is financial future again call us back at 650-392-3195 thanks a lot and talk to you soon…"

132.179.     **Call 48.** On or about May 11, 2023, at 9:50 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

133.180.     **Call 49.** On or about May 11, 2023, at 10:51 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as +0000000000 on Plaintiff's caller ID.

134.181.     **Call 50.** On or about May 12, 2023, at 1:40 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 945-226-7668 on Plaintiff's caller ID.

135.182.     Plaintiff missed this call, but the voicemail left on his phone was a pre-recorded message which stated "Attention business owners debit Tim has discovered an urgent notice regarding your grant application that can provide funding of up to 26,000…"

136.183.    **Call 51.** On or about May 17, 2023, at 9:51 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 562-614-2451 on Plaintiff's caller ID.

184.   When Plaintiff answered this call, and after stating a greeting several times, and a longer than natural pause, he heard a beep, followed by a pre-recording which played from "ERC Concepts" which stated that it was the number one firm that helps companies obtain business credits under the Employee Retention Credit calling.

137.185.    The 562 area code is an in district telephone number.

138.186.    **Call 52.** On or about May 30, 2023, at 1:15 PM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-275-7520 on Plaintiff's caller ID.

139.187.    **Call 53.** On or about May 30, 2023, at 1:19 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 786-936-5568 on Plaintiff's caller ID.

140.188.    **Call 54.** On or about May 31, 2023, at 11:59 AM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 562-614-2449 on Plaintiff's caller ID.

141.189.    When Plaintiff answered the phone, he heard a female pre-recording who identified herself as "Faith" with "ERC Concepts" calling regarding the Employee Retention Credit.

190.   **Call 55.** On or about May 31, 2023, at 1:19 PM Pacific time, Plaintiff received a telemarketing telephone call to the 1582 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 562-614-2449 on Plaintiff's caller ID. The above calls were pre-recorded in nature. The calls either left a

-28-

voicemail on Plaintiff's phone, or to the extent Plaintiff answered the phone, played a pre-recorded message.

191.   **Call 56.** On or about August 23, 2023, at 3:17 PM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 385-383-0255 on Plaintiff's caller ID. A pre-recorded voicemail was left on Plaintiff's phone.

192.   **Call 57.** On or about September 12, 2023, at 1:18 PM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 845-560-0101 on Plaintiff's caller ID. A pre-recorded voicemail was left on Plaintiff's phone. This voicemail included references to the ERC credit and was similar to the other voicemails left in this action.

193.   **Call 58.** On or about September 13, 2023, at 9:33 PM Pacific time, Plaintiff received a telemarketing text to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 368-209-5931 on Plaintiff's caller ID.

194.   The text stated "DON'T MISS OUT! Claim up to $26K/employee from COVID payroll now! Learn how - Dial now: +16364021322".

195.   Under the TCPA, a text is considered a call.

196.   **Call 59.** On or about September 14, 2023, at 9:02 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 218-364-0836 on Plaintiff's caller ID. This was one of two telephone calls that were received back to back within the same minute. The call was of extremely low quality audio of a female pre-recording advertising the ERC tax credit, and provided a call back number that began with 844-681.

197.   **Call 60.** On or about September 14, 2023, at 9:02 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent,

affiliate, or call center acting on their behalf, from a number that displayed as 218-364-0836 on Plaintiff's caller ID. This was one of two telephone calls that were received back to back within the same minute. The call was of extremely low quality audio of a female pre-recording advertising the ERC tax credit, and provided a call back number that began with 844-681.

198.   **Call 61.** On or about September 15, 2023, at 6:22 AM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 218-364-0836 on Plaintiff's caller ID. The call was of extremely fast speaking female pre-recording advertising the ERC tax credit, and provided a call back number that began with 844.

199.   **Call 62.** On or about September 27, 2023, at 12:04 PM Pacific time, Plaintiff received a telemarketing telephone call to the 6308 Line from Defendants, or an agent, affiliate, or call center acting on their behalf, from a number that displayed as 302-385-9899 on Plaintiff's caller ID. The call was a pre-recorded voicemail advertising the ERC tax credit.

200.   To the extent Plaintiff identifies additional calls made by Defendants or their agents or affiliates, Plaintiff will assert claims for those additional calls.

142.

143.201.   Some of the calls alleged in this action included a prompt in the pre-recording to press a number to be connected with an agent, and if that number was pressed, a message would play stating that the call could not be completed because of a Do Not Call request, and the call would terminate.

144.202.   The fact that the calls would terminate but would nevertheless be made, demonstrates that the conduct alleged in this action was committed knowingly and/or willfully.

145.203.   Plaintiff alleges that the calls were made by Unplugged Media because it would be unreasonable for Unplugged Media to have information on its website of

bottom-lineconcepts.com if it was not making calls on behalf of Bottom Line, particularly when the email sent to Plaintiff during Call 1 came from that domain name. Moreover, Plaintiff alleges the remaining calls were made by Unplugged Media and its officers by virtue of the fact that it would be unlikely that other companies were simultaneously calling on behalf of Bottom Line to Plaintiff's phone with the same script – and sometimes used the same area code or telephone number to make the telephone calls. The telephone calls also consisted of a pattern of sometimes calling rapidly in quick succession in order to get through "Do Not Disturb" features on individual's phones. .

146.204.    Plaintiff alleges that Defendants use an ATDS for reasons including the fact that so many other individuals are receiving the same phone calls.

147.205.    The calls were made for the purposes of soliciting the services of an organization which submits paperwork for the Employee Retention Credit to the appropriate government authorities.

148.206.    Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc*., 164 F. Supp. 2d at 898.

149.    Defendant Fox engaged in the operation of the telemarketing scheme.

207.    Defendant BYKHOVSKY engaged in the operation of the telemarketing scheme.

208.    Defendant Cuenza engaged in the operation of the telemarketing scheme.

209.    Defendant CBS engaged in the operation of the telemarketing scheme.

150.210.    Defendant Unplugged Media engaged in the operation of the telemarketing scheme.

211.   The individual defendants were aware that their corporate entities were participating in the illegal telemarketing calls, and nevertheless continued to make the telephone calls.

212.   The corporate actors sued had direct, personal participation, and personally authorized the conduct which violated the TCPA.

213.   Defendant BYKHOVSKY registered the website, telephone numbers, equipment, and/or software used to make the telephone calls that violated the TCPA.

214.   Defendant BYKHOVSKY made the website which individuals were then directed to as part of the telemarketing scheme.

215.   Defendant BYKHOVSKY was involved in the business practices of Unplugged Media and AGH.

216.   Defendant BYKHOVSKY oversaw the day-to-day operations of the telemarketing scheme.

217.   Defendant BYKHOVSKY, specifically, individually, and personally directed and authorized the telephone calls, the manner in which the telephone calls were made, and maintained a relationship with entities that the calls were made on behalf of – including Bottom Line.

218.   Defendant BYKHOVSKY was the central figure and guiding spirit behind the calls made in violation of the TCPA.

219.   Defendant BYKHOVSKY's continual practice of shutting down or letting companies expire yet nevertheless continue to do business demonstrates that there is no clear line between one of his corporate entities, himself, and the next corporate entity, making it so that the two (himself and the corporate entity) fail to exist as separate entities, and essentially an alter ego of one another.

220.   Failure to disregard the division between Defendant BYKHOVSKY and the corporate entities he manages would lead to fraud or injustice.

221.   For example, Defendant BYKHOVSKY has managed many other companies that have either been suspended, terminated, or revoked, with similar names and

purposes, and other lawsuits filed against them demonstrate this continuous practice in order to attempt to escape liability.

222.   Defendant BYKHOVSKY admits he personally has worked on telemarketing campaigns. For example, in a website with a copyright year of 2024, and registered on the domain registry with a date of 2018, scalingsquad.com, Defendant BYKHOVSKY is seen in a video stating "hey there tired of your leads slipping through the cracks? Welcome to scaling squad, where we transform business with AI and outsourcing. Let me tell a story. Ben Gower from flip secrets was struggling to convert leads into sales. In just three months, our conversational AI helped him make an extra 44,000$ per month. At scaling squad we understand the challenges of converting leads into customers. **I've been doing this for years**. That's why we specialize in getting your leads on the phone. (**emphasis added**).

223.   The ScalingSquad website is just another example of the continuous corporate shells that Defendant BYKHOVSKY and Defendant CUENZA (who is the "Client Success Consultant") create in order to evade liability.

224.   On an unlisted Youtube video, uploaded by the account "Alex Gold Inc," which contains a profile picture of Defendant BYKHOVSKY, a video from Feburary 21, 2018 begins with "Hey guys I'm Alex Gold I'm 30 years old I've been running call centers for the last ten years … I was constantly opening up call centers and trying to run a business" "___ and do what I did from scratch" https://www.youtube.com/watch?v=4vBQTN4evNo.

225.   Defendant BYKHOVSKY created, managed, and maintain many call centers, including directing the one(s) that participated in the calls alleged herein.

226.   Defendant BYKHOVSKY's own, recorded video statements, should estop Defendant BYKHOVSKY from now adopting a contrary position that he did not actually participate in setting up call centers.

227.   Part of Defendant BYKHOVSKY's strategy with making telemarketing calls includes making calls he knows violates the TCPA. This is evidenced, in part, by the

-33-

fact that Defendant BYKHOVSKY has been sued for this exact same conduct in the past, yet he nevertheless continues to make new businesses doing the exact same thing – as an intentional act.

228.   Additional videos of Defendant BYKHOVSKY filming and explaining his telemarketing strategy are available on YouTube, including "The Importance of Integrity on the Phone - Gold Calling #4" available at https://www.youtube.com/watch?v=RXTpIX_4MVQ. A segment at 1 min 27 seconds of that video shows Defendant BYKHOVSKY's *personally making* a telephone call that was telemarketing in nature – likely related to one of the several document preparation businesses he had.

229.   Defendant BYKHOVSKY explains the advantages of phone sales as part of his "Gold Calling" series on YouTube, including the advantages of having a script as part of a phone call. https://www.youtube.com/watch?v=DtbzGfET5yE, and that he "really loves phone sales" and that its important to "listen to your own calls."

230.   Defendant BYKHOVSKY, who also goes by the name Alex Gold, calls his telemarketing, and phone calling strategy, "Gold Calling," which includes "three secrets to making sure you can make money on the phone." https://www.youtube.com/watch?v=05mSmmIf52w.

231.   Defendant BYKHOVSKY, as the mastermind of cold, and "gold calling," applied those same techniques and practices to the actions alleged in this lawsuit and did those things intentionally.

~~151.~~232.   Defendant BYKHOVSKY's videos include signs that "Everday I'm Hustlin" and he devotes many videos to describing his calling strategies and practices. This further demonstrates personal involvement - Defendant BYKHOVSKY applied these techniques to the calls alleged herein.

~~152.   Defendants Fox and Bottom Line contracted with Unplugged Media and BYKHOVSKY.~~

-34-

153.233.    Defendants Fox and Bottom LineDefendants Cuenza, CBS, Unplugged Media, and BYKHOVSKY were aware of the telemarketing violations being made by Unplugged Media and BYKHOVSKYeach other and nevertheless continued to contract with them each other and allow the telemarketing calls alleged herein to begin and continue.

154.234.    The conduct alleged in this action was made willful and knowingly, including for example failing to fully disclose identity during the call.

155.235.    The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

156.236.    Defendants' phone call utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

157.237.    Defendants' phone call left an automated or pre-recorded message on Plaintiff's telephone.

158.238.    Plaintiff did not have a prior business relationship with Defendants.

159.239.    Defendants did not have any consent to call Plaintiff.

160.240.    Defendants are not an organization exempt from the TCPA.

161.241.    Defendants' calls to Plaintiff were made for the purpose or intention of being a "telephone solicitation."

162.242.    Defendants' calls to Plaintiff were made for the purpose or intention of being an "unsolicited advertisement."

163.243.    Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

164.244.    Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers to evade TCPA liability.

165.245.    The impersonal and generic nature of the calls demonstrate Defendants utilized an ATDS and/or a pre-recorded voice in making the calls.

166.246.    In total, Defendants and/or their affiliates placed at least fifty-fivesixty two (5562) telephone solicitation calls to Plaintiff.

167.247.   As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

168.248.   Defendants have a pattern and practice of failing to comply with the TCPA.

169.249.   The foregoing acts and omissions were in violation of the TCPA.

170.250.   Defendants are engaging in violations of the TCPA to get business.

171.251.   The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

172.252.   As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

173.253.   The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

174.254.   Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

175.255.   Plaintiff is also entitled to an award of costs.

176.256.   Defendants' calls were not made for "emergency purposes."

177.257.   Defendants' calls to Plaintiff were made without any prior express written consent.

178.258.   Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

179.259.   The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

180.260.      As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

181.261.      Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

**COUNT 1.** Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

182.262.      Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

183.263.      Defendants or one of its affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least fifty-fivesixty-two (5562) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

184.264.      Plaintiff was statutorily damaged at least fifty-fivesixty-two (5562) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

185.265.      Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $82,50093,000.00 plus costs and any other remedy deemed appropriate.

**COUNT 2.**

Violations concerning TCPA implementing regulations, including Do Not Call Registry, 47 C.F.R. § 64.1200

186.266.  Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

187.267.  By placing at least ~~fifty-four~~sixty-one (~~54~~61) telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, Defendants violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

188.268.  The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

189.269.  Defendants do not maintain an internal do not call list pursuant to the TCPA's implementing regulations.

190.270.  Defendants did not properly identify themselves to the Plaintiff when they made the telephone calls.

191.271.  As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on its behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

192.272.  Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

193.273.  The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5).

194.274.  Plaintiff's telephone numbers have been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above. Plaintiff omits one

-38-

of the telephone calls made to his 6308 number because it was made prior to the 30th day following registration.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $8191,5000.00 plus costs and any other remedy deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and/or severally, in an amount to be more fully determined at trial, but at least $163184,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C),

D. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(c),

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5)(C),

F. All reasonable attorneys' fees, witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

H. Leave to amend this Complaint to conform to the evidence presented at trial,

I. Any other relief this Court deems proper.

Respectfully submitted,

Dated: August 17August 2, 202443

/ / /

-39-

*/s/ Jorge Alejandro Rojas*
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

### ~~CERTIFICATE OF SERVICE~~

~~Plaintiff certifies that following submitting this filing via EDSS, he sent a copy of this filing to Defendant Bottom Line Concepts LLC's and Joshua Fox's counsel, Lawrence C. Ecoff, 280 South Beverly Drive, Suite 504, Beverly Hills, CA 90212, via UPS Ground. Plaintiff will send a copy of this filing to the newly added defendants utilizing service of process following the issuance of the summons.~~

~~Dated: August 17, 2023~~

~~*/s/ Jorge Alejandro Rojas*~~
~~JORGE ALEJANDRO ROJAS~~