
Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>               Plaintiff,<br><br>    v.<br><br>UNPLUGGED MEDIA, LLC, et al,<br><br>               Defendants. | Case No. 2:23-cv-02667-AH-KS<br><br>**NOTICE OF MOTION; MOTION FOR DEFAULT JUDGMENT**<br><br>Hearing: March 12, 2025, 1:30 PM<br>Judge: Anne Hwang |

## <u>NOTICE OF MOTION</u>

NOTICE IS GIVEN, that Plaintiff, Jorge Alejandro Rojas, will bring on for hearing, before the Honorable Anne Hwang, this Motion for Default Judgment, on March 12, 2025, 1:30 PM, or as soon thereafter as he may be heard, at the U.S. District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 7D, Los Angeles, California 90012. Plaintiff has been unable to confer with any Defendant prior to the filing of this motion because they have not been responsive, and Plaintiff is unaware of counsel for any Defendant. Notice of the intent to bring this motion as well as a request to confer was sent to each Defendant, and no responses were received as of the date of filing this motion. The Court may vacate the hearing on a motion for default judgment if no opposition is timely filed.

# **TABLE OF CONTENTS**

NOTICE OF MOTION..............................................................................................1

MOTION FOR DEFAULT JUDGMENT .............................................................7

I.    STATEMENT OF FACTS ...........................................................................7

II.   ARGUMENT AND AUTHORITIES ..........................................................8

A.    PRELIMINARY FACTORS ........................................................................8

B.    *EITEL* FACTORS ....................................................................................15

1.    THE POSSIBILITY OF PREJUDICE TO THE PLAINTIFF ..........................15

2.    THE MERITS OF THE SUBSTANTIVE CLAIM AND SUFFICIENCY OF

THE COMPLAINT....................................................................................15

B)    IMPLEMENTING REGULATIONS, FAILURE TO PROPERLY IDENTIFY,

DO NOT CALL REGISTRY .........................................................................22

C)    INDIVIDUAL OFFICER LIABILITY .........................................................23

D)    KNOWINGLY AND/OR WILLFUL ............................................................24

3.    THE SUM OF MONEY AT STAKE IN THE ACTION ..................................26

4.    THE POSSIBILITY OF A DISPUTE CONCERNING THE MATERIAL

FACTS .....................................................................................................27

5.    WHETHER THE DEFAULT WAS DUE TO EXCUSABLE NEGLECT ........27

6.    THE STRONG POLICY UNDERLYING THE FEDERAL RULES OF CIVIL

PROCEDURE FAVORING A DECISION ON THE MERITS ................................27

III.  CONCLUSION.........................................................................................28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768 (11th Cir. 2011)..............................24

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). ....................................................................16

5

*Baughman et al v. Bottom Line Concepts LLC*, S.D. Fla., 1:23-cv-21862 (May 18, 2023)

6

.............................................................................................................................................25

7

*Black v. Bottom Line Concept LLC*, N.D. Ala., 4:23-cv-00553 (May 1, 2023)................25

8

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) ..............12

9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ....................................8, 9, 10

10

*Callier v. Bottom Line Concepts, LLC*, W.D. Tex., 3:23-cv-00180 (May 1, 2023)..........25

11

*Callier v. Bykhovsky*, 2:24-cv-01003 (D. Nev., ECFs. 1, 11). ............................11, 22, 25

12

*Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182 (S.D. Cal. 2013) .........................12

13

*Charvat v. Ryan*, 879 N.E.2d 765 (Ohio 2007).................................................................24

14

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).......................................17

15

*Cunningham v. Enagic USA, Inc.*, Civ. No. 15-00847 (Jan. 16, 2018 M.D. Tenn.) .........26

16

*Cunningham v. Select Student Loan Help, LLC*, Civ. No. 3:15-cv-00554 (M.D. Tenn. July

17

16, 2018)..............................................................................................................................26

18

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978) ..........................................................16

19

*Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). ...............9

20

*Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288

21

(C.D.Cal.2001). ...................................................................................................................16

22

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ..................................................13

23

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). ..................................15, 16, 27

24

*Ewing v. Csolar*, 22-cv-0720-WQH-JLB  (S.D. Cal. Sep. 22, 2022) ..............................16

25

*Facebook, Inc, v. Duguid*, 141 S. Ct. at 1163 (2021)........................................................18

26

*Fridline v. Bottom Line Concepts, LLC*, M.D. Pa., 4:23-cv-01193 (July 18, 2023).........25

27

*G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL

28

3656118 (S.D. Cal. Jul. 31, 2018)......................................................................................27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ................ 8

Gra*nt v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598 (9th Cir. 2011) ....................... 17

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ................................................................. 10

*HICA Educ. Loan Corp. v. Warne*, Case No. 11-cv-04287-LHK, 2012 WL 1156402 (N.D. Cal. Apr. 6, 2012) ........................................................................................................ 26

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023) ....... 9

*In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1136 (S.D. Cal. 2018) ........................................................................................................................................ 9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) . 10, 12, 13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ................................................... 8

*IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989 (N.D. Cal. 2010) ....................................... 15

*Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985 (E.D. Mich. Nov. 8, 2013) ................................................................................................................ 23, 24

*Joe Hand Promotions, Inc. v. Garcia Pacheco*, Case No. 18-cv-1973-BAS-KSC, 2019 WL 2232957 (S.D.Cal. May 23, 2019) ................................................................................... 27

*Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018) .................................... 16

*Julian v. Bottom Line Concepts, LLC*, D. Kan., 2:23-cv-02493 (November 7, 2023) ...... 25

*Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ......................................................................................................... 12

*L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 803-04 (9th Cir. 2017) ........................ 16

*Lazar v. Kroncke*, 862 F.3d 1186 (9th Cir. 2017) ............................................................ 11

*Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636 (N.D. Ill. 2017) ................................ 12

*Martin v. Bottom Line Concepts, LLC*, S.D.N.Y., 1:23-cv-08510 (September 27, 2023) 25

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) ........................... 24

*McEwen v. NRA*, No. 2:20-cv-00153-LEW, 2021 WL 1414273 (D. Me. Apr. 14, 2021) 18

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ..................... 17

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). ..................................................... 8

*Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA, 2021 WL 1291182
(D. Colo. Apr. 7, 2021) ................................................................. 18

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ......................................... 13

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). ................................................ 10

*PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002). ................... 15, 16

*Philip Morris USA Inc. v. Castworld Products*, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).
.................................................................................................. 16

*Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). ............................................. 11, 12

*Reynolds Corp. v. National Operator Services*, Inc., 73 F. Supp. 2d 299 (W.D.N.Y. 1999)
.................................................................................................. 23

*Righetti v. Auth. Tax Servs.*, LLC, Civ. No. C-14-0146-EMC (N.D. Cal. Jul. 6, 2015) .. 15,
26

*Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG (S.D. Cal. May. 22, 2013) ................... 16

*Rogers v. Assurance IQ, LLC*, 2:21-cv-00823-TL (W.D. Wash. Mar. 27, 2023) ............. 17

*Rojas v. Bright World LLC*, No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024).
.......................................................................................... 16, 24, 25

*Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014). .................................... 10

*Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009) .......................... 17

*Savanna Grp., Inc. v. Trynex, Inc*., No. 10 C 7995 (N.D. Ill. Sep. 3, 2013) ................... 24

*Schmidt v. Chris Biz Services, LLC*, S.D. Fl., 2:23-cv-14284-DMN .............................. 21

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800-01 (9th Cir. 2004) 8, 9, 10,
12

*TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917* (9th Cir.1987) ...................... 15, 16

*Texas v. Am. Blastfax*, 164 F.Supp.2d 892 ............................................................ 24

*Trupia v. Bottom Line Concepts, LLC*, Florida Dade, 2023-021229-CA-01 (August 8,
2023)......................................................................................................... 25

*Walden v. Fiore,* 134 S.Ct. 1115, 1121 .................................................................. 12

*Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL (D. Nev. Oct. 24, 2017). .......................................................................................................................... 17

**Statutes**

28 U.S.C. § 1961(a) ......................................................................................... 27

47 U.S.C. § 217 ............................................................................................... 23

47 U.S.C. § 227 ................................................................................................. 7

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................ 7

47 U.S.C. § 227(b)(3)(C) .................................................................................. 7

47 U.S.C. § 227(c)(5) ........................................................................................ 7

47 U.S.C. § 227(c)(5)(C) ................................................................................... 7

**Other Authorities**

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ...... 18

*In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995) 18

*Intercambio, Inc.*, 3 FCC Rcd. 7247 (1988), 1988 WL 486783 ...................... 17

**Rules**

Fed. R. Civ. P. 5 ............................................................................................. 14

Fed. R. Civ. P. 55 .................................................................................... 7, 8, 14

## MOTION FOR DEFAULT JUDGMENT

Plaintiff, pursuant to Fed. R. Civ. P. 55(b)(2), moves this Court for a default judgment against Defendants Unplugged Media, LLC ("Unplugged Media"), Alexander Bykhovsky aka Alex Gold ("Bykhovsky"), Chris Biz Services, LLC (as separate Wyoming and Texas companies) (collectively, "CBS"), Christopher Gutierrez Cuenza aka Chris Cuenza ("Cuenza"), and Alex Gold Holdings, LLC ("AGH"), collectively "Defendants."

**L.R. 7-3 Conferral Statement.** Plaintiff mailed a conferral letter to each Defendants last known address at least seven (7) calendar days prior to the filing of this motion and did not receive a response. Plaintiff is unaware of counsel for any Defendant.

## I.    Statement of Facts

This is an action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and its regulations, 47 C.F.R. § 64.1200. Plaintiff received at least sixty two (62) automated "robocalls" from Defendants without consent between April 3, 2023, and September 27, 2023, using an Automatic Telephone Dialing System ("ATDS") and/or a pre-recorded voice (SAC ¶¶ 79, 101, 115-201, 204, 236-237, 245, 263), while violating the TCPA's regulations concerning the proper identification of the caller (SAC ¶¶ 84, 111, 270), and placing calls notwithstanding Plaintiff is on the National Do Not Call Registry (SAC ¶¶ 43-44, 267, 274).

Damages: Violations are set by statute at $500 per violation, which can be up to trebled under 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5)(C) if the conduct is knowing and/or willful. Sixty two (62) calls were placed using an ATDS and/or a pre-recorded voice or message to a cellular telephone number in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Sixty one (61) calls were placed to a cellular telephone number listed on the Do Not Call Registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), and placed with a failure to properly identify the caller in violation of 47 C.F.R § 64.1200(d)(4).

Plaintiff is entitled to a minimum of $61,500.00 in damages jointly and severally prior to trebling and up to $184,500.00 jointly and severally after trebling.

## II.    Argument and Authorities

### A.    Preliminary Factors

Pursuant to L.R. 55-1, Exhibit 1 (Dec'l of J. Rojas, "PD") is a declaration in compliance with Fed. R. Civ. P. 55(b)(2). Plaintiff is unaware of any Defendant being subject to the Servicemembers Civil Relief Act, being a minor, incompetent, or incarcerated. PD ¶¶ 3-8.

<u>Jurisdiction:</u> This Court has federal-question subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 as the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

Defendant Cuenza is located within and was served in this District. Dkt. 72. Cuenza has mailed Plaintiff filings "made by" Bykhovsky from Cuenza's Los Angeles address (PD ¶ 9). The Court therefore his personal jurisdiction over him.

"Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800-01 (9th Cir. 2004).

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id*. at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may be established via general jurisdiction or specific jurisdiction. See *id*. at 801–02. General jurisdiction exists where the defendant's contacts with the forum state "are so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). Even if a defendant has "sufficient minimum contacts," the court

must also find that the exercise of jurisdiction is reasonable. *In re Packaged Seafood Prod. Antitrust Litig*., 338 F. Supp. 3d 1118, 1136 (S.D. Cal. 2018) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty*., 480 U.S. 102, 113 (1987)).

Courts analyze specific personal jurisdiction under a three-part test: "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs of the test. *Id*. If the plaintiff fails to demonstrate either, personal jurisdiction does not lie in the forum state. *Id*. If, however, the plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476–78.

The first prong of this test asks courts to apply either a "purposeful availment" or "purposeful direction" standard. *Schwarzenegger*, 374 F.3d at 802. Although the purposeful availment standard has typically been applied in actions based on contract while the purposeful direction standard typically applies to actions sounding in tort, the Ninth Circuit has repeatedly stated that these usual applications do not create a "hard-and fast rule." *Davis v. Cranfield Aerospace Sols., Ltd*., 71 F.4th 1154, 1162 (9th Cir. 2023). *See also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023). Instead, the Ninth Circuit has found that "the purposeful direction and availment tests simply frame [the] inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id*. (internal quotation marks and citation omitted). Instead of considering merely the nature of a plaintiff's claims when deciding which test to apply, "courts should comprehensively evaluate the extent of the defendant's contacts

with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

Purposeful direction occurs where the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). "Failing to sufficiently plead any one of these three elements is fatal" to a plaintiff's "attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014). Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," the defendant must "submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and then quoting Burger King, 471 U.S. at 476). In all cases, however, a plaintiff must establish "a direct nexus" between a defendant's contacts with the forum state and the cause of action. *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc*., 575 U.S. 373 (2015).

Defendant Unplugged Media is a Puerto Rico entity and has not appeared. Unplugged Media has had the necessary minimum contacts with this forum and has availed itself of the privilege of conducting activities within the forum state. Unplugged Media was listed as the responsible party on the website's privacy policy of the email domain that was used to email Plaintiff. SAC ¶ 105.

Defendant Bykhovsky previously moved to dismiss for lack of personal jurisdiction. Dkt. 46. The Court granted said motion, but allowed the filing of an amended complaint following screening. Dkt. 56. The Court deemed the amended complaint filed. Dkt. 58. Plaintiff believes that the SAC sufficiently addresses the issues regarding personal jurisdiction. The Court, in deciding that motion, stated "Therefore, the issue here is not whether the wrongful conduct is aimed at the forum or whether the harm would foreseeably be felt in the forum for purposes of determining personal jurisdiction. The deficiency in

the FAC is that the allegations do not plausibly demonstrate that Defendant Bykhovsky engaged in that conduct." Dkt. 56 fn. 4. Plaintiff's SAC asserts that Bykhovsky is the "mastermind" of the calling operation, especially as a result of the YouTube videos he has made bragging about his calling operations. SAC ¶ 231. Bykhovsky engaged in the intentional act of making telephone calls to Plaintiff. SAC ¶¶ 231, 241.

Defendant AGH is a Nevada entity and has not appeared. AGH participated in the telemarketing conduct and is another one of Bykhovsky's entities. SAC ¶¶ 16, 59, 215. Plaintiff alleges that the Bykhovsky entities are alter egos of one another. SAC ¶ 219. AGH at least in part funded the telemarketing operations alleged in this action. SAC ¶ 78. AGH has entered into settlement agreements as well as has had judgments entered against it for TCPA violations. *Callier v. Bykhovsky*, 2:24-cv-01003 (D. Nev., ECFs. 1, 11).

Defendant CBS, the Wyoming entity and Texas entities, although non-resident defendants, effectively have principal places of operation within this district given that Cuenza is located within this District. Additionally, these entities website included language stating that the proper venue for litigation was in California. SAC ¶ 72. These entities have participated in the telemarketing conduct based on admissions by Bykhovsky as well as their website and court filings in other cases (SAC ¶ 65).

As to all Defendants, some of the calls placed were made to a 424, in district area code, concerning services available in this district. Plaintiff previously lived in Torrance, California, from 1996 to 2014. PD ¶ 10. At least one of the calls was placed while Plaintiff was located within this District. SAC ¶¶ 6, 47. PD ¶ 11. The illegal conduct here was directed at this forum. All Defendants worked together to make telephone calls on a nationwide basis.

The first part of the three-part test encompasses two distinct concepts, "purposeful direction" and "purposeful availment." *Lazar v. Kroncke*, 862 F.3d 1186, 1201 (9th Cir. 2017). "Purposeful availment" is generally used to analyze contract claims, while "purposeful direction" is used to analyze tort claims. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). The only claims alleged in this case are for violations of the TCPA. Because

TCPA claims sound in tort, *see Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013), the Court should limit its discussion to "purposeful direction." *Cf. Picot*, 780 F.3d at 1212.

In the context of TCPA cases, calling a telephone number with an area code within the district satisfies these requirements. *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state.")

An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *In re W. States*, 715 F.3d at 743 n.25. Conduct is "expressly aimed" at a forum if the conduct "directly targets" the forum. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). The "express aiming" analysis "depends to a significant degree on the specific type of tort or other wrongful conduct at issue." *Picot*, 780 F.3d at 1206; *Schwarzenegger*, 374 F.3d at 807. However, courts are "limited to 'the defendant's suit-related conduct.'" *Picot*, 780 F.3d at 1215 n.3 (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1121). Courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S.Ct. at 1122; *Picot*, 780 F.3d at 1214. "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 134 S.Ct. at 1122, 1125; *Picot*, 780 F.3d at 1214. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S.Ct. at 1125; see also *Picot*, 780 F.3d at 1214. Plaintiff's 424 area code telephone number makes any call to it, especially one in which there was no prior express relationship between the parties, targeted to this forum.

-12-

1    With respect to the second prong ("arising out of or relating to"), the Ninth Circuit

2  refers to this prong as the "but for" test. *In re W. States*, 715 F.3d at 742. Under the second

3  prong, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus

4  exists between those contacts and the cause of action." *Id.* That is, a plaintiff must show

5  that "but for" the defendant's forum related conduct, the injury would not have occurred.

6  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). With respect to the

7  third prong ("reasonableness"), the Ninth Circuit considers seven factors: (1) the extent of

8  the defendant's purposeful interjection into the forum state, (2) the burden on the defendant

9  in defending in the forum, (3) the extent of the conflict with the sovereignty of the

10  defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most

11  efficient judicial resolution of the controversy, (6) the importance of the forum to the

12  plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative

13  forum. *In re W. States*, 715 F.3d at 745; *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th

14  Cir. 2002).

15    Defendants are not burdened defending here – they have failed to appear (except for

16  Bykhovsky in moving to dismiss). That they do business in this District, targeting this

17  jurisdiction's area code, and have at least one defendant located in this District furthers the

18  point that the notions of fair play aren't violated. Defendant Bykhovsky did not challenge

19  jurisdiction further after the filing of the operative complaint. This controversy would be

20  most efficiently resolved here in this District - given that the procedural history of this case

21  is located here, and this district has as much of an interest in adjudicating this dispute as

22  another district. Otherwise, Plaintiff would need to institute several different actions in

23  several different forums for separate sets of phone calls, expending extra judicial resources

24  and that of the parties. Moreover, this Court, when ruling on Plaintiff's motion for leave to

25  amend, considered the fact that not all the telephone calls were made while Plaintiff was

26  located within this District.

27    <u>Service:</u> Defendants were properly served with process. <u>Defendant Unplugged

28  Media</u> was served with a summons on the Second Amended Complaint (Dkt. 61) on

October 10, 2024 (Dkt. 86), utilizing a process server who performed service on PRelocate, LLC - its registered agent. Dkt. 25-2, p. 2. Fed. R. Civ. P. 55(a) default was entered by the Clerk on November 4, 2024 (Dkt. 88). <u>Defendant Bykhovsky</u> was served on January 24, 2024 (Dkt. 37), with the Amended Complaint (Dkt. 12). Bykhovsky then appeared and moved to set aside an entry of default (Dkt. 50), which Plaintiff did not oppose (Dkt. 51), and default was set aside on July 12, 2024 (Dkt. 56). After that, Plaintiff filed a Second Amended Complaint, which was served via mail pursuant to Fed. R. Civ. P. 5(b)(2)(C). Plaintiff mailed on August 6, 2024, a copy of the Second Amended Complaint to 954 Ave Ponce De Leon Ste 205 Pmb 10560 SAN JUAN, PR 00907-3648 (the address listed with the Puerto Rico Department of State for Defendant Bykhovsky) as well as via mail to the address Defendant Bykhovsky has listed on the Court's docket, 40 Calle Elbrus Panama City, 0801 Panama. Dkt. 74. At the time the SAC was filed, Defendant Bykhovsky was not in default (Dkt. 56), and had entered an appearance upon the filing of his motion to dismiss, and therefore service of the summons via a process server was not required. *See* Fed. R. Civ. P. 5(a)(1)(B) (providing that the Rule 5 method of serving pleadings governs pleadings "filed after the original complaint"). Default was entered by the Clerk on September 23, 2024 (Dkt. 77).

      <u>Defendant CBS</u>, the Wyoming entity, was served at its registered agent as listed with the Wyoming Secretary of State on September 10, 2024. Dkt. 75. Default was entered by the Clerk on October 7, 2024 (Dkt. 84). <u>Defendant CBS</u>, the Texas entity, was served at its registered agent as listed with the Texas Secretary of State on September 12, 2024. Dkt. 73. Default was entered by the Clerk on October 7, 2024 (Dkt. 85). <u>Defendant Cuenza</u> was personally served on September 9, 2024, within this district. Dkt. 72. Default was entered by the Clerk on October 7, 2024 (Dkt. 83).

      <u>Defendant AGH.</u> Personal service on the registered agent, Defendant Bykhovsky was attempted at the address listed with the Nevada Secretary of State for the registered agent. The process server noted the address does not exist. Dkt. 92. Service was conducted via the Nevada Secretary of State, pursuant to Nevada Revised Statute 14.030, which

authorizes service via the Secretary in situations where the street address of the registered agent is not staffed. Fed R. Civ. P. 4(e)(1) allows Plaintiff to follow Nevada state law as service was performed there. The Secretary of State accepted service on October 24, 2024. Dkt. 93. Default was entered by the Clerk on November 19, 2024 (Dkt. 95).

### B.    *Eitel* Factors

The Ninth Circuit has set forth seven balancing factors, known as the *Eitel* factors, that a court should consider when evaluating a motion for default judgment:

> (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### 1.    The Possibility of Prejudice to the Plaintiff

The "Court must examine whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment." *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Eitel*, 782 F.2d at 1471-72). The "TCPA expressly provides for the award of statutory damages, which further supports a finding that [the p]laintiff will be unfairly prejudiced (and [the d]efendant's conduct will not appropriately be deterred) if default judgment is not entered." *Righetti v. Auth. Tax Servs*., LLC, Civ. No. C-14-0146-EMC, at *6 (N.D. Cal. Jul. 6, 2015).

### 2.    The Merits of the Substantive Claim and Sufficiency of the Complaint

A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917* (9th Cir.1987); *Discovery Communications, Inc. v. Animal*

*Planet, Inc*., 172 F.Supp.2d 1282, 1288 (C.D.Cal.2001). *Philip Morris USA Inc. v. Castworld Products*, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original); see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this test when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The Court may treat as true those allegations in the complaint except those relating to damages. *TeleVideo*, 826 F.2d at 917-18. In the pre-discovery phase, general allegations in a TCPA case are sufficient. *Robbins v. Coca-Cola-Co.,* No. 13-CV-132-IEG (S.D. Cal. May. 22, 2013). Here, Plaintiff has alleged and supported his TCPA claims with more than adequate specificity – he has identified the date, time, and call information, and sufficiently connected each call to Defendants.

"Courts considering the issue have allowed separate recoveries when the same call results in violations of both § 227(b) and § 227(c)" *Ewing v. Csolar*, 22-cv-0720-WQH-JLB, at *9 (S.D. Cal. Sep. 22, 2022) (collecting cases). This District has also followed this. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024).

### a)    Pre-Recorded Voice and/or ATDS

The TCPA prohibits the (1) use of a pre-recorded voice in telemarketing calls to residential phones without prior express consent of the called party, 47 U.S.C. § 227(b), and (2) telemarketing calls to residential telephone subscribers on the DNC list, 47 U.S.C. § 227(c); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018).

The elements of a claim with respect to an ATDS are: (1) the defendant called a telephone number assigned to a cellular telephone service; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *L.A. Lakers, Inc. v. Fed. Ins. Co*., 869 F.3d 795, 803-04 (9th Cir. 2017); *see also* 47 U.S.C. § 227(b)(1)(A)(iii).

To plead a claim under the artificial or pre-recorded portions of section 227(b), Plaintiff must allege the following elements: (1) a defendant called their cellular or residential phone numbers, (2) using an artificial or pre-recorded voice, (3) without their

prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). *Rogers v. Assurance IQ, LLC*, 2:21-cv-00823-TL, at \*6 (W.D. Wash. Mar. 27, 2023).

"Prior express consent" under the TCPA must be "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 955 (9th Cir. 2009). "Calls otherwise in violation of the TCPA are not unlawful if made 'for emergency purposes or made with the prior express consent of the called party,' 47 U.S.C. § 227(b)(1)(A); however, 'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011) (unpublished disposition). There are two consent standards: 1) prior express written consent and 2) prior express consent. The difference between the two depends on whether the call was a telemarketing call. *Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL, at \*7 (D. Nev. Oct. 24, 2017).

Since 2012, prior express written consent of the recipient is required for all telemarketing and advertisement calls. 47 CFR 64.1200(a)(2). *In The Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, the FCC held that "we revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines . . ." 27 F.C.C. Rcd. 1830, 1831 (2012). *Williams,* at \*7 (D. Nev. Oct. 24, 2017)

Telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (citing 47 C.F.R. § 64.1200(f)(12) (2013)). "[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message." *Chesbro*, 918 (9th Cir. 2012) (citing 18 F.C.C.R. 14014 at 14098 ¶ 141 (2013)). The TCPA defines "advertisement" as follows: "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

-17-

"The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). Additional requirements for what the written agreement shall include are in the regulations. 47 C.F.R. § 64.1200(f)(8)(i) (2013). *Williams,* at *9 (D. Nev. Oct. 24, 2017). Here, there was no agreement. PD ¶ 12.

To allege that an ATDS was used, Plaintiff must plead that the system had the capacity "either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Facebook, Inc, v. Duguid*, 141 S. Ct. at 1163 (2021). After *Facebook*, at least two district courts have evaluated ATDS allegations at the pleading staged based on plausible inferences which suggest that a random or sequential number generator was used to make the calls, such as use of random caller ID numbers, prerecorded messages, and failures to honor do-not-call requests. *See, e.g., Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA, 2021 WL 1291182, at *7 (D. Colo. Apr. 7, 2021); *McEwen v. NRA*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021).

The calls in this case were made to solicit the services of consulting and representation services before the Internal Revenue Service ("IRS") in connection with the Employee Retention Credit ("ERC"). Plaintiff alleges that the Defendants here placed calls on behalf of Bottom Line Concepts (which has been dismissed from this case) who would submit the claims to the IRS and Defendants would earn a commission from any recovery from the IRS as part of the ERC. SAC ¶¶ 81-83. Because the calls here were made using a pre-recorded voice and/or an ATDS and were telemarketing, they required prior express written consent.

The calls were made to cellular residential telephone numbers, the 1582 Line (SAC ¶ 39) and the 6308 Line (SAC ¶ 40). These lines are paid by Plaintiff and are not associated

-18-

with a business and only used by Plaintiff. SAC ¶¶ 41-42; PD ¶¶ 13-14. Plaintiff received the first call on April 3, 2023. SAC ¶ 99. Plaintiff missed the call, but a pre-recorded voicemail was left. SAC ¶¶ 100-101. Plaintiff was located within this District on travel when he received the call. SAC ¶ 102. On April 4, 2023, Plaintiff called the number that was displayed on the caller ID and provided in the voicemail made on April 3. SAC ¶ 103. Plaintiff spoke with a Dylan Jenkins who identified the company as Bottom Line Concepts and e-mailed Plaintiff using dylan@bottom-lineconcepts.com. SAC ¶ 103. That domain, as of May 9, 2023, identifies the entity name as Unplugged Media, LLC, with a Puerto Rico address, throughout. SAC ¶ 105.

Plaintiff continued to receive calls. Although some of the calls were made using different numbers, Plaintiff alleges they were all made by the same entity. For example, Call 4 was made by 908-327-6911 (SAC ¶ 117), but the voicemail left included a call back number the same as Call 1 (SAC ¶¶ 118, 101). On April 12, 2023, Plaintiff made requests to stop being called in writing to dylan@bottom-lineconcepts.com. SAC ¶ 119; PD ¶ 16. Another written request was made on April 13, 2023. SAC ¶ 121. Despite this, during some of the calls a message would play stating that the call could not be completed because of a do not call request. SAC ¶ 201.

The remaining calls in the SAC are from Defendants because of similarities in numbers, the recordings left, or other content. Some calls reference "debiton" in their recordings, and called from the same number as the call back included in Call 1. Calls with different numbers, but which also referenced "debiton" or had a similar pre-recording, where then associated to be made by Defendants, for example call 15 was from an 802 number but had a female pre-recording referencing debiton.

Plaintiff has plead at least sixty-two (62) calls made using an ATDS and/or pre-recording. The allegations of the calls in the SAC have been admitted, and the damages for the TCPA violations are set by statute which the Court can calculate. To the extent the Court seeks additional information regarding the calls placed, Plaintiff can testify to those facts. PD ¶ 15.

The calls were placed using an auto dialer for reasons including the use of pre-recorded messages and longer than natural pauses. Plaintiff need only allege the use of either a pre-recorded message was used, and not both. At least one of the calls had these pauses and beeps in addition to the pre-recorded messages. SAC ¶ 184. The parties had no prior business relationship (SAC ¶ 238), and the circumstantial indicia of the calls support the inference that an ATDS was used. More detailed information about a dialing system is not appropriately required at the pleadings stage.

The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995). On May 9, 2013, the FCC determined that it was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

Similarly, here, Defendants cannot allege that another entity is making the calls on its behalf as a defense. Plaintiff alleges that the calls were made for the benefit of Bottom Line Concepts, which is no longer a party to this case. SAC ¶¶ 59, 82-83, 87, 103, 203, 217. Plaintiff alleges that defendants profited from the calls made by Bottom Line and made the calls on Bottom Line's behalf. The presence of Unplugged Media's name and information on the website domain which was used to email Plaintiff during the call back following Call 1 establishes the connection between Unplugged Media and this case.

CBS and Cuenza are liable for the conduct alleged based on statements made by Bykhovsky to Plaintiff. Bykhovsky stated in sum and substance during a phone call with Plaintiff that he worked with Cuenza on the website and the telemarketing actions alleged in this case. SAC ¶ 88. Moreover, Cuenza and CBS have been sued by others – related to telemarketing regarding Bottom Line and the ERC credit. *Schmidt v. Chris Biz Services, LLC,* S.D. Fl., 2:23-cv-14284-DMN. The Amended Complaint in *Schmidt* shows websites with Bottom Line's logo with footers of Chris Biz Services, in addition to statements that demonstrate that CBS uses "pre-recorded voice messages." Additionally, the phone numbers and calling scripts alleged in *Schmidt* are similar or identical to that alleged here.

In defending *Schmidt,* Cuenza filed an affidavit where he admits that he is a resident of this District, and also that he[1] became aware of pre-recorded phone calls being made to market the ERC. SAC ¶¶ 63-67 Additionally, the website ercfederalcredit.com, which used the Bottom Line Concepts logo, contained a footer of Copyright 2023 Chris Biz Services. All rights reserved." SAC ¶ 70. The Privacy Policy of the website also contained references to Unplugged Media and the address of the registered agent. SAC ¶ 71.

Bykhovsky and Cuenza continue to work together. Cuenza is the "Client Success Consultant" for one of Bykhovsky's latest shells – ScalingSquad.com. SAC ¶ 223. Bykhovsky is the mastermind of the call center operations. A February 21, 2018 YouTube

---

[1] Plaintiff believes that the declaration, written by Cuenza, not represented by counsel, incorrectly uses the word "Plaintiff" when it should say "Defendant." SAC ¶ 66.

video, uploaded by the account "Alex Gold Inc," begins with "Hey guys I'm Alex Gold I'm 30 years old I've been running call centers for the last ten years … I was constantly opening up call centers and trying to run a business" "___ and do what I did from scratch" SAC ¶ 224.

Plaintiff sues both CBS Wyoming and CBS Texas entities as they are both operated by Cuenza, and Plaintiff believes they are alter egos of one another. Plaintiff believes both entities participated in the conduct alleged in this action.

Plaintiff sues AGH because it is alleged it participated in the calls. AGH is another example of a lack of division between Bykhovsky and the corporate entities he manages. Plaintiff alleges AGH is an alter ego of Bykhovsky and his other corporate shells. Moreover, AGH has participated in illegal telemarketing conduct in the past. AGH has been sued for TCPA violations at least twice – at least one of which was reduced to a judgment. SAC ¶¶ 60, 227 Additionally, AGH entered into a stipulated consent judgment, which arose out of a contract dispute following an alleged failure to comply with a settlement agreement that arose from a TCPA action. *Callier v. Bykhovsky*, 2:24-cv-01003 (D. Nev., ECFs. 1, 11).

> **b)** **Implementing Regulations, Failure to Properly Identify, Do Not Call Registry**

Regulations require the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. §§ 64.1200(b), (d)(4). Defendants did not provide the information required by the regulation. Defendants intentionally fail to provide this in order to avoid liability. SAC ¶¶ 112-113, 234-235.

The elements of the National Do Not Call Registry claim are: (1) the defendant called a residential telephone number; (2) registered on the National Do Not Call Registry; (3) at least twice in any 12-month period; (4) for initiating any telephone solicitation. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

The 1582 Line has been registered on the Registry since January 18, 2008 (SAC ¶ 43; PD ¶ 17; Exhibit 2, 1582 Line DNC Registration), making all of the calls made to it a violation, as more than one call was made, and the calls were for the purpose of telephone solicitation to a residential telephone number. The 6308 Line has been registered on the Registry since March 22, 2023 (SAC ¶ 44; PD ¶ 18; Exhibit 3, 6308 Line DNC Registration), making all of the calls placed to that line, except for Call 18 which was placed on April 21, 2023 (within 30 days of registration), a violation, as more than one call was made, and the calls were for the purpose of telephone solicitation to a residential number.

Plaintiff registered his phone numbers on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls which prevented Plaintiff from using his phone for legitimate purposes. SAC ¶ 45; PD ¶ 19.

### c)    Individual Officer Liability

Plaintiff sues Bykhovsky and Cuenza. As an officer of their respective companies, they are responsible for its operations. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'")

The TCPA is part of the Communications Act of 1934, and the Communications Act contains a *respondeat superior* provision. *See* 47 U.S.C. § 217 ("[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as that of the person*.") (emphasis added). This provision applies when "construing and enforcing the provisions of the Communications Act," of which the TCPA is a part. *Reynolds Corp. v. National Operator Services*, Inc., 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

These individuals were clearly acting "within the scope of their employment" when they orchestrated the placing of calls to Plaintiff. Specifically, they selected the phone numbers that would be called, chose the telemarketing equipment that would be used, and personally authorized the telemarketing conduct of their company. SAC ¶¶ 38, 211-221. In TCPA cases, courts have upheld personal liability against individuals. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024)*; See Jackson's Five Star Catering, Inc. v. Beason*. (Granting plaintiff's motion for summary judgement where the record contained no dispute that the individual corporate officer participated in the payment of and authorization for the fax ads). Indeed, "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force." *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011). *See Texas v. Am. Blastfax, Inc*., at 898 (noting the corporate officers were "the two persons who controlled all of Blastfax's day-to-day operations" and had "direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct");" *Savanna Grp., Inc. v. Trynex, Inc*., No. 10 C 7995, at *14 n.5 (N.D. Ill. Sep. 3, 2013).

Additionally, Bykhovsky has publicly stated in multiple videos online that he has been doing this (running call centers) for years. SAC ¶ 222.

### d)    Knowingly and/or Willful

Courts routinely award treble damages in TCPA cases arising from defaults. Intent to violate the statute is not required for treble damages. *Alea London Ltd. v. Am. Home Servs*., 638 F.3d 768, 776 (11th Cir. 2011). If the Defendant knows the facts underlying the offense, it can be held liable for treble damages—ignorance of the law is no excuse. *Charvat v. Ryan*, 879 N.E.2d 765, 767 (Ohio 2007). "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 899 (citing *Intercambio*, *Inc*., 3 FCC Rcd. 7247 (1988), 1988 WL 486783).

-24-

Defendants used fake names in the course of the telemarketing calls, such as "Debiton." SAC ¶¶ 111, 136, 141, 147, 150, 169, 172, 176, 182. Defendants at least willfully violated the implementing regulations regarding identification by failing to provide the required information concerning themselves.

"Courts in this Circuit have typically exercised their discretion to award treble damages in cases where the defendant had a prior judgment against it for violating the TCPA or where statutory damages were trivial and thus would deter the defendant from future misconduct." *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024).

Here, AGH and Bykhovsky have had at least one judgment entered against them for TCPA violations. Both have also recently entered into a consent judgment arising from a contract dispute after failing to pay as part of a settlement agreement which arose out of TCPA violations. *Callier v. Bykhovsky*, 2:24-cv-01003 (D. Nev., ECFs. 1, 11). Cuenza and CBS have also been sued in the past for TCPA violations. SAC ¶ 62. Bottom Line Concepts has had several actions filed against it for alleged TCPA violations. *See Callier v. Bottom Line Concepts, LLC*, W.D. Tex., 3:23-cv-00180 (May 1, 2023); *Black v. Bottom Line Concept LLC*, N.D. Ala., 4:23-cv-00553 (May 1, 2023); *Baughman et al v. Bottom Line Concepts LLC*, S.D. Fla., 1:23-cv-21862 (May 18, 2023); *Fridline v. Bottom Line Concepts, LLC*, M.D. Pa., 4:23-cv-01193 (July 18, 2023); *Trupia v. Bottom Line Concepts, LLC*, Florida Dade, 2023-021229-CA-01 (August 8, 2023); *Martin v. Bottom Line Concepts*, *LLC*, S.D.N.Y., 1:23-cv-08510 (September 27, 2023); *Julian v. Bottom Line Concepts, LLC*, D. Kan., 2:23-cv-02493 (November 7, 2023). While Plaintiff does not seek recovery from Bottom Line, Plaintiff alleges that third parties, like Defendants here, made the telephone calls alleged in those other cases.

The facts also demonstrate that Defendants would not be deterred by just statutory damages. Defendants try to evade accountability for their actions, including by opening new corporate shells as well as failing to properly identify themselves. Defendants also change the content of their websites, for example a September 2023 version of the Chris

Biz Services website admitted to the use of pre-recorded voice messages, SAC ¶ 75, but a later version shifted to a website stating that legal services are being provided instead (SAC ¶ 76).

The fact that during some of the telephone calls a message would play stating that the call could not be connected due to a do not call request (SAC ¶ 201), notwithstanding the fact that the call was already made, further demonstrates knowing and willfulness.

The Court should exercise its discretion and treble the statutory damages.

### 3.    The Sum of Money at Stake in the Action

Under the fourth factor, a court considers the amount of money at stake in relation to the seriousness of a party's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176-77. "Default judgment is disfavored when a large amount of money is involved," or the amount sought appears "unreasonable in light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, Case No. 11-cv-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations and internal quotation marks omitted).

"[T]he sum of money at stake in [a TCPA] action is particularly appropriate for resolution on default judgment because TCPA damages are specifically set by statute." *Auth. Tax Servs.*, at *7.

Courts around the country have granted six and even seven-figure default judgments in TCPA cases. *See e.g., Cunningham v. Select Student Loan Help, LLC*, Civ. No. 3:15-cv-00554, at *1 (M.D. Tenn. July 16, 2018) ($249,000); *Cunningham v. Enagic USA, Inc.*, Civ. No. 15-00847, at *1-2 (Jan. 16, 2018 M.D. Tenn.), Dkt. 274 ($259,500). The amount sought here is significantly lower than these figures, even with trebling.

The calls invaded Plaintiff's privacy and were frustrating, annoying, and obnoxious. SAC ¶ 247; PD ¶ 19. Plaintiff's "burden to prove up the amount of damages is minimal because the TCPA provides for the award of statutory damages." *Auth. Tax Servs.*, at *8. This conclusion is unchanged by the number of calls for which damages are sought. *Id.* at *9.

### 4.    The Possibility of a Dispute Concerning the Material Facts

Defendants' failure to appear leaves the Court with an absence of any facts—let alone material facts—in dispute. Courts routinely find that no factual dispute exists, and that therefore, this *Eitel* factor weighs in favor of granting default judgment. *See, e.g., Joe Hand Promotions, Inc. v. Garcia Pacheco*, Case No. 18-cv-1973-BAS-KSC, 2019 WL 2232957, at *4 (S.D.Cal. May 23, 2019); *G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL 3656118, at *2 (S.D. Cal. Jul. 31, 2018).

### 5.    Whether the Default was due to Excusable Neglect

The Court must determine whether the Defendants' default is a product of excusable neglect. *Eitel*, 782 F.2d at 1472. This factor favors the entry of default judgment where Plaintiff demonstrates that Defendants have been properly served and are thus aware of the pending action. *Rojas v. Bright World LLC,* No. 2:23-CV-04274-SVW-PVC (ECF. No. 21, Feb. 14, 2024), citing *Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d 1072, 1082 (C.D. Cal 2012).

Default here is not due to excusable neglect. Bykhovsky has a constantly shifting narrative as to where he resides, which Plaintiff believes is in an attempt to avoid liability. While Bykhovsky's address with this Court is Panama, filings made by Bykhovsky have originated from Cuenza's address – who is not an attorney. Bykhovsky recently entered into a stipulated judgment in another action – which arose out of a contract dispute following a settlement for TCPA violations, in which he provides an address located in Puerto Rico. Requests to confer prior to the filing of this motion were also sent, including via e-mail to Bykhovsky.

### 6.    The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring a Decision on the Merits

The policy favoring resolution of a case on the merits always weighs against default judgment. *NewGen*, 840 F.3d at 616. However, the other factors outweigh this policy because Defendant's "failure to answer Plaintiff's SAC makes decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

-27-

### III. Conclusion

Plaintiff requests that judgment be entered against Defendants, jointly and severally, in the amount of $184,500.00. Interest is requested pursuant to 28 U.S.C. § 1961(a). Plaintiff does not seek attorney's fees, but will seek costs allowed under 28 U.S.C. § 1920 following disposal of this motion, consistent with applicable local rules.

Respectfully submitted,

Dated: January 31, 2025

/s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

### STANDING ORDER LENGTH CERTIFICATE OF COMPLIANCE

The undersigned, Plaintiff Jorge Alejandro Rojas, certifies that the motion, excluding the notice, table of contents, and table of authorities, does not exceed the twenty-five (25) page limit prescribed in this Court's Standing Order. Dkt. 97.

Dated: January 31, 2025

/s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS

### CERTIFICATE OF SERVICE

Plaintiff will mail a copy of this filing to each Defendants last known address and/or registered agent via USPS Mail.

/s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS